# APPENDIX D

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| AVAGO TECHNOLOGIES GENERAL IP (SINGAPORE) PTE. LTD.,<br><br>       Plaintiff,<br><br>     v.<br><br>ASUSTEK COMPUTER INC. and ASUS COMPUTER INTERNATIONAL,<br><br>       Defendants. | Civil Action No. 2:15-cv-00239-JRG |

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE**
**(LETTER ROGATORY)**

TO THE APPROPRIATE JUDICIAL AUTHORITY OF JAPAN:

The United States District Court for the Eastern District of Texas presents its compliments to the Appropriate Judicial Authority of Japan, and requests international assistance to obtain evidence to be used in a civil proceeding before this Court in the above-captioned matter.

The Court requests the assistance described herein in the interests of justice.

## I.    REQUEST

The Court requests that the Appropriate Judicial Authority of Japan compel production of documents from the following corporate entity:

**Murata Manufacturing Co., Ltd.**
10-1 Higashikotari 1-chome, Nagaokakyo-shi,
Kyoto 617-8555, Japan

Specifically, the Court requests that Murata Manufacturing Co., Ltd., ("Murata") produce the documents and things set out in **Exhibit A** to this Request.

The Court further requests that the Appropriate Judicial Authority of Japan compel

Murata to respond to provide testimony as to the topics set forth in **Exhibit B** to this Request. With respect to methods and procedures to be followed in connection with the testimony topics, the Court respectfully requests that, to the extent possible under Japanese law: (a) Murata be required to designate one or more officers, directors, or managing agents, or other person(s) who consent to testify on its behalf as to the topics set forth in **Exhibit B**; (b) an appropriate judicial officer of Japan direct that the Murata witness(es) be duly sworn in accordance with the applicable laws and procedures of Japan; (c) the examination be conducted orally; (d) the parties' legal representatives, their interpreters, and a stenographer be permitted to be present during the examination; and (e) the stenographer be permitted to record verbatim the examination, and a full transcript of the examination, in English, be made at the time of the examination.

The Court understands that the documents and information requested may be of a confidential nature. As such, there is an interim protective order in this case to protect the confidentiality of any documents produced and of any responses to the written questions. A copy of the interim protective order is attached hereto as **Exhibit C**. The parties in the above-captioned matter may negotiate a more-detailed protective order. If the Court enters a new order, it will be sent separately.

## II.    FACTS

Plaintiff Avago Technologies General IP (Singapore) PTE. Ltd. ("Avago") filed suit against Defendants ASUSTeK Computer Inc. and ASUS Computer International (collectively "ASUS") in the United States District Court for the Eastern District of Texas, seeking a judgment that ASUS infringes Avago's U.S. Patent Nos. 5,670,730, 5,870,087, 5,982,830, 6,188,835, 6,430,148, 6,744,387, and 6,982,663 (collectively, the "Asserted Patents"). Avago seeks an award of damages from ASUS to compensate for the alleged patent infringement. The technology described and claimed in the Asserted Patents relates to, among other things: decoding electronic video and/or audio files (*e.g.*, MPEG); storing audio files (*e.g.*, MP3) on an integrated circuit chip; reading data from an optical disc (*e.g.*, DVD or Blu-ray disc); and use of

or compatibility with the IEEE 802.11 wireless standard.

Through an investigation, Avago has determined that Murata makes components that are used in the allegedly infringing devices made and sold by ASUS. Thus, it appears that Murata possesses information of relevance to Avago's claims of infringement in this patent litigation.

## III.     EVIDENCE

The documents requested to be produced are identified in **Exhibit A**. The deposition topics to which Murata's responses are requested are set forth in **Exhibit B**. The Court's interim protective order in this case, attached as **Exhibit C**, protects the confidentiality of any documents or information Murata provides.

## IV.     OFFER OF RECIPROCAL ASSISTANCE

The United States District Court for the Eastern District of Texas is willing to provide similar assistance to the Appropriate Judicial Authority of Japan. *See* 28 U.S.C. § 1782.

## V.     REIMBURSEMENT FOR COSTS

Avago's counsel (David E. Sipiora, 1400 Wewatta Street, Suite 600, Denver, CO 80202) is willing to reimburse the Appropriate Judicial Authority of Japan for costs and expenses incurred in executing this Letter Rogatory.


Dated: _____     _____

                             Hon. Rodney Gilstrap
                             United States District Judge
                             United States District Court for the Eastern District of Texas
                             100 East Houston Street
                             Marshall, TX  75670
                             United States of America

## **EXHIBIT A**

## **DOCUMENTS REQUESTED**

## **DEFINITIONS AND INSTRUCTIONS**

### *DEFINITIONS*

1.       "Murata," "You," "you," "Your," or "your" shall mean and refer to Murata Manufacturing Co., Ltd., and all predecessors, successors, subsidiaries, divisions, parents and affiliates thereof, past or present, joint ventures, and other legal entities that are or were wholly or partially owned or controlled by Murata, either directly or indirectly, and all past or present directors, officers, owners, agents, attorneys, and others acting for or on behalf of these same entities.

2.       "Defendants" shall mean and refer to Defendants ASUSTeK Computer Inc. and ASUS Computer International, and all predecessors, successors, subsidiaries, divisions, parents, and affiliates thereof, past or present, joint ventures, and other legal entities that are or were wholly owned or controlled by Defendants, either directly or indirectly, and all past or present directors, officers, owners, employees, agents, representatives, consultants, attorneys, and others acting for or on behalf of these same entities.

3.       "Plaintiff" or "Avago" shall mean and refer to Avago Technologies General IP (Singapore) Pte. Ltd., its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates, and any persons or entities who are, or at any time to which the Letter relates were acting on behalf of Avago.

4.       The "'730 patent" means U.S. Patent No. 5,670,730.

5.       The "'087 patent" means U.S. Patent No. 5,870,087.

6.       The "'835 patent" means U.S. Patent No. 6,188,835.

5

7.      The "'148 patent" means U.S. Patent No. 6,430,148.

8.      The "'663 patent" means U.S. Patent No. 6,982,663.

9.      The "'387 patent" means U.S. Patent No. 6,744,387.

10.      The "'830 patent" means U.S. Patent No. 5,982,830.

11.      The term "Patents-in-Suit" means and refers to, individually and collectively, the '730, '087, '835, '148, '663, '387, and '830 patents, as defined herein.

12.      The term "Component(s)" means any product, system, software, or method, in whole or in part, that complies with, is compatible with, or implements any part of any version of 802.11 standard, including without limitation Clause 18 (titled "Orthogonal frequency division multiplexing (OFDM) PHY specification"), including but not limited to, Murata Part No. LBEH19UQJC.

13.      "Accused Product(s)" means any activity, product, process, method, system, apparatus, or thing made, used, sold, or offered for sale by Defendants or imported into the United States by Defendants that infringes one or more claims of the Patents-in-Suit, including, without limitation, ASUS Model Nos. T100TAF, GS751JM, M11BB-B07, X102BA, and/or TF701T. "Accused Product(s)" includes but is not limited to Defendants' products containing Components.

14.      "Source Code" means computer source and/or object code (*e.g.*, RTL, HDL, VHDL, Verilog, *etc.*), whether in printed or electronic form.

15.      The term "document" refers to documents and electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained, and includes all preliminary and final drafts of any such item.

6

16.     The term "all documents" means any and all documents that Murata can locate through a diligent search of all locations likely to contain the documents requested herein and through a reasonable inquiry of all persons likely to know of the existence of the documents requested herein.

17.      "Concerning" means regarding, relating to, concerning, pertaining to, referring to, describing, discussing, reflecting, stating, mentioning, comprising, containing, including, summarizing, explaining, providing context to, commenting upon, embodying, showing, demonstrating, evidencing, constituting, consisting of, supporting, contradicting, resulting from, or to be in any way logically or factually connected with the matter specified.

18.     The terms "and," "or," and "and/or" shall be construed conjunctively or disjunctively, whichever maximizes the scope of the document request, and shall not be interpreted to limit the scope of these requests.

19.     The terms "any" and "all" mean "any and all."

20.     The terms "each" and "every" mean "each and every."

21.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

22.     The singular form of any word shall be construed to include the plural. The plural form of any word shall be construed to include the singular.

*INSTRUCTIONS*

1.     In responding to the following document requests, furnish all available documents in the possession, custody, or control of Murata.

2.     If you lack the ability to comply with a particular document request, specify whether the inability to comply is because the particular document or category of documents requested never existed; has been destroyed; has been lost or misplaced; has been stolen; or has

never been or is no longer in your possession, custody, or control.  If the particular document or category of documents is no longer in your possession, custody, or control, identify the name and address of any person or entity known or believed by you to have possession, custody, or control of that document or category of documents.

      3.     If you contend a particular document or category of documents contains trade secret or other confidential research, development, or commercial information, please mark the document or documents as such, as required by the protective order attached to this Letter Rogatory as **Exhibit C**.

## DOCUMENT REQUESTS

1.      Documents sufficient to identify each of Your products or Components sold or otherwise provided to Defendants (including those products or Components sold or otherwise provided to any entities participating in the design, manufacture, assembly, or testing of any product of Defendants) into any product of Defendants since 2009.

2.      For each of Your products or Components identified in response to Request No. 1, documents sufficient to identify the product name, model and revision number, and product family.

3.      For each of Your products or Components identified in response to Request No. 1, documents sufficient to describe the identification and meaning of all chip or die markings or codes, such as model number, lot code, and the like.

4.      Documents sufficient to show each product of Defendants into which any of your products or Components are incorporated.

5.      For each of Your products or Components identified in response to Request No. 1, Documents sufficient to show the supply, manufacturing, and distribution chain for each of Your products or Components, from their point(s) of manufacture to their point(s) of incorporation into any product of Defendants.

6.      For each of Your products or Components identified in response to Request No. 1, all Documents Concerning the design, layout, operation, and/or function of any product or Component used in any product sold by or on behalf of Defendants, including but not limited to, manufacturing drawings, datasheets, blueprints or other technical diagrams, design and engineering specifications, computer modeling information, Source Code, and development and testing information.

7.      All Source Code designed, written, compiled, produced and/or used by You Concerning any Component used in any product sold by or for the benefit of Defendants, and all Documents Concerning such Source Code.

8.      All Documents relating to testing and/or certification of any of Your products and/or Components used in any product sold by or for the benefit of Defendants, including Documents relating to compliance with any standard (*e.g.*, MPEG-2, ISO/IEC 14496-10 (MPEG-4 Part 10)/ITU-T H.264, 802.11, *etc.*)

9.      All Documents and Communications with Defendants Concerning the Accused Products, any Components, Avago, the Litigation, the Patents-in-Suit, or the Letter, including without limitation Documents Concerning the purchase, sale and/or pricing of any product.

10.     All Documents Concerning supply agreements, statements of work, plans of record, purchase orders, engineering requirement specifications, mechanical outlines, and/or the pricing of Components and associated technology between You and Defendants or between You and any third-party for any product or Component used in any Accused Products.

11.     Documents sufficient to identify on a monthly basis products or Components sold and/or shipped to Defendants.

## EXHIBIT B

## DEPOSITION TOPICS

1.     The origins and maintenance of Documents produced by You in response to the Letter including: (a) authentication of the Document(s); (b) its status as a business record; and (c) the circumstances under which the Document was prepared, for what purpose, to whom it was distributed or intended to be distributed, and how it was preserved and maintained.

2.     The design, development, and manufacture of any Component(s) sold or otherwise provided to Defendants or to any third-party for inclusion or use within any product sold by or on behalf of Defendants.

3.     The product name, model and revision number, and product family of Components sold or otherwise provided to Defendants or any third-party for inclusion or use within any product sold by or on behalf of Defendants, including without limitation identification and meaning of all chip or die markings or codes, such as model number, date, and lot code.

4.     The products made, sole, or offered for sale by Defendants into which Your products or Components are incorporated.

5.     Sales (including the number of units shipped and associated revenue) of each product or Component sold or otherwise provided to Defendants or any third-party for inclusion or use within any product sold by or on behalf of Defendants.

6.     The supply and distribution chain for Your products and Components, from their point(s) of manufacture to their point(s) of incorporation into any product sold by or for the benefit of Defendants.

7.     The structure, function, and operation of Your products and Components sold or otherwise provided to Defendants.

8.      Systems, methods, instructions, or protocols for controlling, programming, interacting with, or communicating with Your products and/or Components for use with any product sold by or for the benefit of Defendants.

**9.**      All Source Code designed, written, compiled, produced and/or used by You Concerning any Component used in any product sold by or for the benefit of Defendants.

10.      Testing and/or certification of Your products and/or Components with respect to use of or compliance with any standard (*e.g.*, MPEG-2, ISO/IEC 14496-10 (MPEG-4 Part 10)/ITU-T H.264 standard, IEEE 802.11, *etc.*)

11.      Requests by Defendants for documents or information within the possession, custody, or control of You or any entity related, directly or indirectly, with You.

12.      Communications between You and Defendant Concerning Your products and/or Components and any product of Defendants.

13.      Communications between You and Defendants Concerning Avago, the Litigation, the Patents-in-Suit, and/or this Letter.

67519777v.2

12

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

AVAGO TECHNOLOGIES GENERAL IP
(SINGAPORE) PTE. LTD.,

        Plaintiff,

        v.

ASUSTEK COMPUTER INC. and ASUS
COMPUTER INTERNATIONAL,

        Defendants.

Civil Action No. 2:15-cv-00239-JRG

## PROTECTIVE ORDER

WHEREAS, Plaintiff Avago Technologies General IP (Singapore) Pte. Ltd. ("Avago")

and Defendants ASUSTeK Computer Inc. and Asus Computer International (collectively,

"Asus"), hereafter referred to as "the Parties," believe that certain information that is or will be

encompassed by discovery demands by the Parties involves the production or disclosure of

trade secrets, confidential business information, or other proprietary information;

WHEREAS, the Parties seek a protective order limiting disclosure thereof in accordance

with Federal Rule of Civil Procedure 26(c):

THEREFORE, it is hereby stipulated among the Parties and ORDERED that:

1.      Each Party may designate as confidential for protection under this Order, in whole or in

        part, any document, information or material that constitutes or includes, in whole or in

        part, confidential or proprietary information or trade secrets of the Party or a Third Party

        to whom the Party reasonably believes it owes an obligation of confidentiality with

        respect to such document, information or material ("Protected Material").  Protected

        Material shall be designated by the Party producing it by affixing a legend or stamp on

        such document, information or material as follows: "CONFIDENTIAL."  The word

"CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts) for which such protection is sought.  For deposition and hearing transcripts, the word "CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL."

2.     Any document produced under Patent Rules 2-2, 3-2, and/or 3-4 before issuance of this Order with the designation "Confidential" or "Confidential - Outside Attorneys' Eyes Only" shall receive the same treatment as if designated "RESTRICTED -- ATTORNEYS' EYES ONLY" under this Order, unless and until such document is redesignated to have a different classification under this Order.

3.     With respect to documents, information or material designated "CONFIDENTIAL," "RESTRICTED -- ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" ("DESIGNATED MATERIAL"),[1] subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d) affidavits; and (e) stipulations.  All copies, reproductions, extracts, digests and complete or partial summaries prepared from any

---

[1] The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "RESTRICTED -- ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE," both individually and collectively.

DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order.

4.      A designation of Protected Material (*i.e.*, "CONFIDENTIAL," "RESTRICTED -- ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE") may be made at any time. Inadvertent or unintentional production of documents, information or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. Any party that inadvertently or unintentionally produces Protected Material without designating it as DESIGNATED MATERIAL may request destruction of that Protected Material by notifying the recipient(s), as soon as reasonably possible after the producing Party becomes aware of the inadvertent or unintentional disclosure, and providing replacement Protected Material that is properly designated. The recipient(s) shall then destroy all copies of the inadvertently or unintentionally produced Protected Materials and any documents, information or material derived from or based thereon.

5.      "CONFIDENTIAL" documents, information and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating party, upon order of the Court, or as set forth in paragraph 12 herein:

(a)      outside counsel of record in this Action for the Parties;

(b)      employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action;

(c)      in-house counsel for the Parties who either have responsibility for making decisions dealing directly with the litigation of this Action, or who are assisting outside counsel in the litigation of this Action;

(d)      up to and including three (3) designated representatives of each of the Parties to the extent reasonably necessary for the litigation of this Action, except that either party may in good faith request the other party's consent to designate one or more additional representatives, the other party shall not unreasonably withhold such

consent, and the requesting party may seek leave of Court to designate such additional representative(s) if the requesting party believes the other party has unreasonably withheld such consent;

(e)  outside consultants or experts (*i.e.*, not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation, provided that: (1) such consultants or experts are not presently employed by the Parties hereto for purposes other than this Action; (2) before access is given, the consultant or expert has completed the Undertaking attached as Exhibit A hereto and the same is served upon the producing Party with a current curriculum vitae of the consultant or expert at least ten (10) days before access to the Protected Material is to be given to that consultant or Undertaking to object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert. The Parties agree to promptly confer and use good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within fifteen (15) days of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order;

(f)  independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by counsel and reasonably necessary to assist counsel with the litigation of this Action; and

(g)  the Court and its personnel.

6.  A Party shall designate documents, information or material as "CONFIDENTIAL" only upon a good faith belief that the documents, information or material contains confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such documents, information or material.

7.  Documents, information or material produced pursuant to any discovery request in this Action, including but not limited to Protected Material designated as DESIGNATED MATERIAL, shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose. Any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not

make any copies, duplicates, extracts, summaries or descriptions of such DESIGNATED

MATERIAL or any portion thereof except as may be reasonably necessary in the

litigation of this Action. Any such copies, duplicates, extracts, summaries or descriptions

shall be classified DESIGNATED MATERIALS and subject to all of the terms and

conditions of this Order.

8.      To the extent a producing Party believes that certain Protected Material qualifying to be

designated CONFIDENTIAL is so sensitive that its dissemination deserves even further

limitation, the producing Party may designate such Protected Material "RESTRICTED --

ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes

computer source code or object code (*e.g.*, RTL, HDL, VHDL, Verilog, C, *etc.*) and/or

live data (that is, data as it exists residing in a database or databases) ("Source Code

Material"), the producing Party may designate such Protected Material as

"RESTRICTED CONFIDENTIAL SOURCE CODE."

9.      For Protected Material designated RESTRICTED -- ATTORNEYS' EYES ONLY,

access to, and disclosure of, such Protected Material shall be limited to individuals listed

in paragraphs 5(a-c) and (e-g); provided, however, that access by in-house counsel

pursuant to paragraph 5(c) be limited to in-house counsel who exercise no competitive

decision-making authority on behalf of the client.

10.     For Protected Material designated RESTRICTED CONFIDENTIAL SOURCE CODE,

the following additional restrictions apply:

(a)      Access to a Party's Source Code Material or a Third Party's Source Code
         Material shall be provided only on "stand-alone" computer(s) (that is, the
         computer may not be linked to any network, including a local area network
         ("LAN"), an intranet or the Internet). The stand-alone computer(s) may be
         connected to (i) a printer, or (ii) a device capable of temporarily storing electronic
         copies solely for the limited purposes permitted pursuant to paragraphs 10 (h and

k) below. Additionally, except as provided in paragraph 10(k) below, the stand-alone computer(s) may only be located at the offices of the producing Party's outside counsel;

(b)     The receiving Party shall make reasonable efforts to restrict its requests for such access to the stand-along computer(s) to normal business hours, which for purposes of this paragraph shall be 8:00 a.m. through 6:00 p.m. However, upon reasonable notice from the receiving party, the producing Party shall make reasonable efforts to accommodate the receiving Party's request for access to the stand-alone computer(s) outside of normal business hours. The Parties agree to cooperate in good faith such that maintaining the producing Party's Source Code Material at the offices of its outside counsel shall not unreasonably hinder the receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action;

(c)     The producing Party shall provide the receiving Party with information explaining how to start, log on to, and operate the stand-alone computer(s) in order to access the produced Source Code Material on the stand-alone computer(s);

(d)     The producing Party will produce Source Code Material in computer searchable format on the stand-alone computer(s) as described above;

(e)     Access to Protected Material designated RESTRICTED CONFIDENTIAL -- SOURCE CODE shall be limited to outside counsel and outside consultants or experts[2] (*i.e.*, not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 5(e) above. A receiving Party may include excerpts of Source Code Material in a pleading, exhibit, expert report, discovery document, deposition transcript, other Court document, provided that the Source Code Documents are appropriately marked under this Order, restricted to those who are entitled to have access to them as specified herein, and, if filed with the Court, filed under seal in accordance with the Court's rules, procedures and orders;

(f)     To the extent portions of Source Code Material are quoted in a Source Code Document, either (1) the entire Source Code Document will be stamped and treated as RESTRICTED CONFIDENTIAL SOURCE CODE or (2) those pages containing quoted Source Code Material will be separately stamped and treated as RESTRICTED CONFIDENTIAL SOURCE CODE;

(g)     Except as set forth in paragraph 10(k) below, no electronic copies of Source Code Material shall be made without prior written consent of the producing Party,

---

[2] For the purposes of this paragraph, an outside consultant or expert is defined to include the outside consultant's or expert's direct reports and other support personnel, such that the disclosure to a consultant or expert who employs others within his or her firm to help in his or her analysis shall count as a disclosure to a single consultant or expert.

except as necessary to create documents which, pursuant to the Court's rules, procedures and order, must be filed or served electronically;

(h)    The receiving Party shall be permitted to make a reasonable number of printouts and photocopies of Source Code Material, all of which shall be designated and clearly labeled "RESTRICTED CONFIDENTIAL SOURCE CODE," and the receiving Party shall maintain a log of all such files that are printed or photocopied;

(i)    Should such printouts or photocopies be transferred back to electronic media, such media shall be labeled "RESTRICTED CONFIDENTIAL SOURCE CODE" and shall continue to be treated as such;

(j)    If the receiving Party's outside counsel, consultants, or experts obtain printouts or photocopies of Source Code Material, the receiving Party shall ensure that such outside counsel, consultants, or experts keep the printouts or photocopies in a secured locked area in the offices of such outside counsel, consultants, or expert. The receiving Party may also temporarily keep the printouts or photocopies at: (i) the Court for any proceedings(s) relating to the Source Code Material, for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the Source Code Material are taken, for the dates associated with the deposition(s); and (iii) any intermediate location reasonably necessary to transport the printouts or photocopies (*e.g.*, a hotel prior to a Court proceeding or deposition); and

(k)    A producing Party's Source Code Material may only be transported by the receiving Party at the direction of a person authorized under paragraph 10(e) above to another person authorized under paragraph 10(e) above, on paper or removable electronic media (*e.g.*, a DVD, CD-ROM, or flash memory "stick") via hand carry, Federal Express or other similarly reliable courier. Source Code Material may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet. Source Code Material may only be transported electronically for the purpose of Court proceeding(s) or deposition(s) as set forth in paragraph 10(j) above and is at all times subject to the transport restrictions set forth herein. But, for those purposes only, the Source Code Materials may be loaded onto a stand-alone computer.

11.    Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated RESTRICTED -- ATTORNEYS' EYES ONLY and/or RESTRICTED CONFIDENTIAL SOURCE CODE (collectively "HIGHLY SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in

part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not
prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent
application pertaining to the subject matter of the patents-in-suit on behalf of the
receiving Party or its acquirer, successor, predecessor, or other affiliate during the
pendency of this Action and for one year after its conclusion, including any appeals.
However, nothing in this Order shall preclude persons with access to HIGHLY
SENSITIVE MATERIAL from participating in any *inter partes* review, post-grant
proceedings, or *ex parte* reexamination under 35 U.S.C. §§ 301-307, 311-319, or 321-
329. To ensure compliance with the purpose of this provision, each Party shall create an
"Ethical Wall" between those persons with access to HIGHLY SENSITIVE MATERIAL
and any individuals who, on behalf of the Party or its acquirer, successor, predecessor, or
other affiliate, prepare, prosecute, supervise or assist in the preparation or prosecution of
any patent application pertaining to the subject matter of the patent-in-suit.

12.     Nothing in this Order shall require production of documents, information or other
material that a Party contends is protected from disclosure by the attorney-client
privilege, the work product doctrine, or other privilege, doctrine, or immunity. If
documents, information or other material subject to a claim of attorney-client privilege,
work product doctrine, or other privilege, doctrine, or immunity is inadvertently or
unintentionally produced, such production shall in no way prejudice or otherwise
constitute a waiver of, or estoppel as to, any such privilege, doctrine, or immunity. Any
Party that inadvertently or unintentionally produces documents, information or other
material it reasonably believes are protected under the attorney-client privilege, work
product doctrine, or other privilege, doctrine, or immunity may obtain the return of such

documents, information or other material by promptly notifying the recipient(s) and

providing a privilege log for the inadvertently or unintentionally produced documents,

information or other material. The recipient(s) shall gather and return all copies of such

documents, information or other material to the producing Party, except for any pages

containing privileged or otherwise protected markings by the recipient(s), which pages

shall instead be destroyed and certified as such to the producing Party.

13.     There shall be no disclosure of any DESIGNATED MATERIAL by any person

authorized to have access thereto to any person who is not authorized for such access

under this Order. The Parties are hereby ORDERED to safeguard all such documents,

information and material to protect against disclosure to any unauthorized persons or

entities.

14.     Nothing contained herein shall be construed to prejudice any Party's right to use any

DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided

that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible

to have access to the DESIGNATED MATERIAL by virtue of his or her employment

with the designating party, (ii) identified in the DESIGNATED MATERIAL as an

author, addressee, or copy recipient of such information, (iii) although not identified as an

author, addressee, or copy recipient of such DESIGNATED MATERIAL, has, in the

ordinary course of business, seen such DESIGNATED MATERIAL, (iv) a current or

former officer, director or employee of the producing Party or a current or former officer,

director or employee of a company affiliated with the producing Party; (v) counsel for a

Party, including outside counsel and in-house counsel (subject to paragraph 9 of this

Order); (vi) an independent contractor, consultant, and/or expert retained for the purpose

of this litigation; (vii) court reporters and videographers; (viii) the Court; or (ix) other persons entitled hereunder to access to DESIGNATED MATERIAL.  DESIGNATED MATERIAL shall not be disclosed to any other persons unless prior authorization is obtained from counsel representing the producing Party or from the Court.

15.  Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "RESTRICTED -- ATTORNEY' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" pursuant to this Order.  Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order.  Until expiration of the 30-day period, the entire deposition or hearing transcript shall be treated as confidential.

16.  Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal and shall remain under seal until further order of the Court.  The filing party shall be responsible for informing the Clerk of the Court that the filing should be sealed and for placing the legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER" above the caption and conspicuously on each page of the filing.  Exhibits to a filing shall conform to the labeling requirements set forth in this Order.  If a pretrial pleading filed with the Court, or an exhibit thereto, discloses or relies on confidential documents, information or material, such confidential portions shall be redacted to the extent necessary and the pleading or exhibit filed publicly with the Court.

17.  The Order applies to pretrial discovery.  Nothing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of

this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

18.  A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn.  If the designating Party does not agree to redesignation within ten (10) days of receipt of the written request, the requesting Party may apply to the Court for relief.  Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper.  Such application shall be treated procedurally as a motion to compel pursuant to Federal Rules of Civil Procedure 37, subject to the Rule's provisions relating to sanctions.  In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met.  Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

19.  Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that he or she is subject to the terms and conditions of this Order, and shall sign an acknowledgment that he or she has received a copy of, has read, and has agreed to be bound by this Order.  A copy of the acknowledgment form is attached as Appendix A.

20.  To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Party(ies)") and in the event that such Third Parties contend the discovery sought involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

21.     To the extent that a producing Party withholds material from production on the ground

that the material is subject to a confidentiality agreement with a Third Party ("Third Party

Confidential Material"), the following requirements apply:

(a)     The producing Party shall provide notice to the Third Party of its obligation to
produce such Third Party Confidential Material.

(b)     No later than ten (10) days after the date the Third Party Confidential Material is
withheld (*i.e.*, the date on which the material would otherwise have been
produced), the producing Party must provide the receiving Party with the
following information: (i) the name of the Third Party, (ii)  the date that the
producing Party sent communication to the Third Party regarding the production
of this material, and (iii) the description(s) of the material withheld.

(c)     If the Third Party does not object, the Third Party Confidential Material shall be
produced.

(d)     If the Third Party requests that some Third Party Confidential Material be
redacted, the producing Party shall: (i) produce the material with the requested
redactions, and (ii) provide the receiving Party with the Third Party's bases for
requesting such redactions.

(e)     If the Third Party objects to the production of any Third Party Confidential
Material, the producing Party shall provide the receiving Party with an
identification and description of the Third Party Confidential Material withheld.

22.     To the extent that discovery or testimony is taken of Third Parties, the Third Parties may

designate as "CONFIDENTIAL," "RESTRICTED -- ATTORNEYS' EYES ONLY," or

"RESTRICTED CONFIDENTIAL SOURCE CODE" any documents, information or

other material, in whole or in part, produced or given by such Third Parties.  The Third

Parties shall have ten (10) days after production of such documents, information or other

materials to make such a designation.  Until that time period lapses or until such a

designation has been made, whichever occurs sooner, all documents, information or other

material so produced or given shall be treated as "HIGHLY SENSITIVE MATERIAL"

in accordance with this Order.

23.     Within thirty (30) days of final termination of this Action, including any appeals, all
        DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes,
        summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts
        incorporated into any privileged memoranda of the Parties and materials which have been
        admitted into evidence in this Action), shall at the producing Party's election either be
        returned to the producing Party or be destroyed.  The receiving Party shall verify the
        return or destruction by affidavit furnished to the producing Party, upon the producing
        Party's request.

24.     The failure to designate documents, information or material in accordance with this Order
        and the failure to object to a designation at a given time shall not preclude the filing of a
        motion at a later date seeking to impose such designation or challenging the propriety
        thereof.  The entry of this Order and/or the production of documents, information and
        material hereunder shall in no way constitute a waiver of any objection to the furnishing
        thereof, all such objections being hereby preserved.

25.     Any Party knowing or believing that any other party is in violation of or intends to violate
        this Order and has raised the question of violation or potential violation with the opposing
        party and has been unable to resolve the matter by agreement may move the Court for
        such relief as may be appropriate in the circumstances.  Pending disposition of the motion
        by the Court, the Party alleged to be in violation of or intending to violate this Order shall
        discontinue the performance of and/or shall not undertake the further performance of any
        action alleged to constitute a violation of this Order.

26.     Production of DESIGNATED MATERIAL by each of the Parties or any Third Party
        shall not be deemed a publication of the documents, information and material (or the

contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information or other material or its contents.

27.     Nothing in this Order shall be construed to effect an abrogation, waiver or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

28.     Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action and (b) to apply for additional protection of DESIGNATED MATERIAL.

**So Ordered and Signed on this**

**Jun 15, 2015**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

§
§
V.                                      §
§
§

**APPENDIX A
UNDERTAKING OF EXPERTS OR CONSULTANTS
REGARDING PROTECTIVE ORDER**

I, _____, declare that:

1.    My address is _____.

      My current employer is _____.

      My current occupation is _____.

2.    I have received a copy of the Protective Order in this action.  I have carefully read and understand the provisions of the Protective Order.

3.    I will comply with all of the provisions of the Protective Order.  I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action any information designated as "CONFIDENTIAL," "RESTRICTED -- ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" that is disclosed to me.

4.    Promptly upon termination of these actions, I will return all documents and things designated as "CONFIDENTIAL," "RESTRICTED -- ATTORNEYS' EYES ONLY," or "RESTRICTED CONFIDENTIAL SOURCE CODE" that came into my possession, and all documents and things that I have prepared relating thereto, to the outside counsel for the party by whom I am employed.

5.      I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the

Protective Order in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Signature _____

Date _____