United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVAGO TECHNOLOGIES GENERAL IP (SINGAPORE) PTE LTD.,<br><br>Plaintiff,<br><br>v.<br><br>ASUSTEK COMPUTER, INC., et al.,<br><br>Defendants.<br><br>AVAGO TECHNOLOGIES GENERAL IP (SINGAPORE) PTE LTD.,<br><br>Plaintiff,<br><br>v.<br><br>ASUSTEK COMPUTER INC, et al.,<br><br>Defendants. | Case No. 15-cv-04525-EMC<br><br>Case No. 16-cv-00451-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO RECONSIDER (*Avago I*); AND DENYING DEFENDANT'S MOTION TO DISMISS (*Avago II*)**<br><br>Docket No. 181, C-15-4525 (*Avago I*)<br>Docket No. 16, C-16-0451 (*Avago II*) |

There are two cases pending before this Court that involve the same parties (*i.e.*, Avago and ASUS) and the same patents (*i.e.*, the '730, '087, '835, '148, '663, '387 (original and corrected), and '830 patents). The cases have been related. The first-filed case (No. C-15-4525 EMC) shall hereinafter be referred to as *Avago I*. The second-filed case (No. C-16-0451 EMC) shall hereinafter be referred to as *Avago II*.

As a formal matter, the hearing on April 18, 2016, was to address only the motion to dismiss, filed by ASUS, in *Avago II*. However, as a practical matter, the Court also addressed the merits of the motion to reconsider, filed by Avago, in *Avago I* because there was an overlap

between the two motions.

As the Court stated at the hearing, the motions are disposed of as follows: (1) Avago's motion to reconsider in *Avago I* is granted and (2) ASUS's motion to dismiss in *Avago II* is denied.

## I.  DISCUSSION

A.  Motion to Reconsider – *Avago I*

The Court previously limited Avago's motion to reconsider to one issue alone – *i.e.*, whether 15 products, which were not sold or offered for sale until after Avago served its preliminary infringement contentions in *Avago I*, should be a part of *Avago I* (as Avago argues) or *Avago II* (as ASUS argues).

The Court concludes that the 15 products should be a part of *Avago I*, and not *Avago II*.  In *Avago I*, when Avago moved for leave to amend its infringement contentions to add new products to the lawsuit, ASUS stated that it did *not* oppose Avago's request so long as the accused product was sold or offered for sale after Avago had served its preliminary infringement contentions.  That being the case, ASUS should not now be opposing Avago's motion to reconsider.

ASUS points out that, in its opposition to the motion for leave to amend, it stated that it would not oppose *so long as Avago specified what those products were*.  ASUS contends that, because Avago never specified what those products were, those products were properly not included in *Avago I*.  According to ASUS, Avago could have – with diligence – determined what products were sold or offered for sale after its preliminary infringement contentions were served.

The Court is not persuaded.  ASUS's position smacks of gamesmanship.  It would have been a simple matter for Avago and ASUS to meet and confer and agree what those products were.  ASUS shall not be rewarded for hiding the ball.

Accordingly, the Court shall allow Avago to add the 15 products into *Avago I*.  Avago shall file an amended complaint in *Avago II* to indicate the withdrawal of claims based on those 15 products, as they are now being litigated in *Avago I*.  The amended complaint shall be filed within one week of the date of this order.  Avago shall also file amended infringement contentions in *Avago I* so as include the 15 new products.  The amended infringement contentions shall likewise

be filed within one week of the date of this order.

B.    <u>Motion to Dismiss – *Avago II*</u>

    1.    <u>Law of the Case, Collateral Attack, and Claim Splitting</u>

The Court now turns to ASUS' motion to dismiss I *Avago II*. As a preliminary matter, the Court rejects Avago's contention that the motion to dismiss the case should be denied in its entirety because, in *Avago I*, this Court authorized Avago to file a new lawsuit (*i.e.*, *Avago II*), and thus this is the "law of the case." While the Court in *Avago I* did note that Avago would probably want to file a new lawsuit and stated that Avago could do so, *see* Holohan Decl., Ex. A (*Avago I* Tr. at 23-24) (stating that "I'm going to deny the motion to amend the preliminary infringement contentions" and that "[y]ou can bring another lawsuit, which I assume you'll do[,] [a]nd then I'll assume they get related here and you'll probably be back here anyway[,] [b]ut it's not part of this suit."), the Court did not say that Avago's new lawsuit would thereby be immune from any challenge by ASUS. *Cf. Davis-Lynch, Inc. v. Hilcorp Energy Co.*, No. 6:09-cv-168, 2009 U.S. Dist. LEXIS 125393, at *4 (E.D. Tex. Nov. 18, 2009) (R&R) ("[T]he Court did not consider whether claim preclusion would apply to a separate suit directed at the additional products.").

That being said, the Court still rejects ASUS's argument that *Avago II* is an improper collateral attack on the Court's ruling in *Avago I* that Avago could not file amended infringement contentions. The Court respectfully declines to follow Judge Tigar's decision in *Icon-IP Pty Ltd. v. Specialized Bicycle Comps., Inc.*, No. 13-cv-03677-JST, 2013 U.S. Dist. LEXIS 189290, at *5 (N.D. Cal. Oct. 22, 2013) (concluding that the new lawsuit was an improper collateral attack "*notwithstanding the order's silence* on the question of whether Icon would be permitted to accuse the models at issue in a subsequent action") (emphasis added), and instead follows the approach of the Illinois district court in *Fujitsu Ltd. v. Tellabs Operations, Inc.*, No. 12 C 3229, 2013 U.S. Dist. LEXIS 12142, at *12 (N.D. Ill. Jan. 30, 2013) (explaining that there was no collateral attack because it "did *not* rule that [plaintiff] was forever barred from suing [defendant] for infringement based on newly-accused products," and so "there is no implicit or explicit conflict between the court's earlier opinions [denying amendment] and the allegations of [plaintiff's] New Complaint") (emphasis in original).

1    The Court also rejects – at least at this stage of the proceedings – ASUS's argument that dismissal of *Avago II* is warranted because, with the suit, Avago has engaged in impermissible claim splitting. The claim splitting issue cannot be decided at this juncture of the proceedings (*i.e.*, 12(b)(6)).

"The bar against claim splitting is a form of res judicata." *Fujitsu*, 2013 U.S. Dist. LEXIS 12142, at *7. The basic elements for res judicata are as follows: "(1) the same parties, or their privies, were involved in the prior litigation, (2) the prior litigation involved the same claim or cause of action as the later suit, and (3) the prior litigation was terminated by a final judgment on the merits." *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 952 (9th Cir. 2002). Claim splitting basically applies the same test, *see Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688-69 (9th Cir. 2007) (stating that, in assessing whether claim splitting is applicable, a court "borrow[s] from the test for claim preclusion"), except that, "[u]nlike traditional claim preclusion, . . . the bar against claim splitting can be applied *before* either action reaches a final judgment on the merits." *Fujitsu*, 2013 U.S. Dist. LEXIS 12142, at *7 (emphasis added); *see also Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 987 n.1 (10th Cir. 2002) (stating that "[i]t is clear that a motion to dismiss based on improper claim-splitting need *not* – indeed, often cannot – wait until the first suit reaches final judgment[;] [t]hus, in the claim-splitting context, the appropriate inquiry is whether, *assuming* that the first suit were already final, the second suit could be precluded pursuant to claim preclusion") (emphasis added).

According to Avago, the Court should outright reject ASUS's claim splitting argument because ASUS waived that argument – *i.e.*, by not objecting to the Court's statement in *Avago I* that Avago could file a new lawsuit. This position, however, does not have merit. Simply because ASUS did not at that time state that it would challenge a new suit does not mean that ASUS necessarily waived the right to challenge the new suit. *Cf. Brand Tarzana Surg. Inst., Inc. v. Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Welfare Plan*, No. CV 14-3191 FMO (AGRx), 2016 U.S. Dist. LEXIS 296239, at *21-22 (C.D. Cal. Mar. 8, 2016) (noting that "'California courts will find waiver when a party intentionally relinquishes a right, or when that party's acts *are so inconsistent with* an intent to enforce the right as to induce a reasonable belief that such right

4

1   has been relinquished'") (emphasis added).

2       Avago argues still that there can be no impermissible claim splitting here because (1) claim
3   splitting analysis requires the assumption that *Avago I* reached a final judgment, *see Icon*, 2013
4   U.S. Dist. LEXIS 189290, at *7 (stating that, "in the context of claim-splitting, the analysis
5   requires only the *assumption* that the first suit was finally decided") (emphasis in original), and (2)
6   if that assumption is made here, then the 695 products at issue in *Avago II* were never a part of the
7   final judgment in *Avago I* because they were specifically excluded from *Avago I*. *See* Opp'n at 10
8   (arguing that "a final disposition on the merits of [*Avago I*] would plainly *not* operate as a final
9   judgment on the merits as to the 695 products at issue because those products are explicitly
10  excluded from [*Avago I*]") (emphasis in original). But, under this argument, claim splitting might
11  never be possible. Moreover, res judicata applies not only to claims that were actually brought but
12  also to claims that *could* have been brought. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l*
13  *Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) ("Newly articulated claims based on the
14  same nucleus of facts may still be subject to a res judicata finding if the claims could have been
15  brought in the earlier action.").

16      Accordingly, as ASUS argues, the main question for the Court in deciding the claim
17  splitting issue should be whether the claims of patent infringement in *Avago I* and *Avago II* are
18  sufficiently identical.

> "Whether two claims for patent infringement are identical" for purposes of claim preclusion is a question of Federal Circuit law. Under Federal Circuit law, "two claims for patent infringement do not arise from the same transactional facts unless the accused devices in each claim are 'essentially the same.'" "Accused devices are 'essentially the same' where the differences between them are *merely 'colorable' or 'unrelated to the limitations in the claim of the patent*.'" "[T]he party asserting claim preclusion has the burden of showing that the accused devices are essentially the same."

25  *Fujitsu*, 2013 U.S. Dist. LEXIS 12142, at *8-9 (emphasis added; quoting *Acumed LLC v. Stryker*
26  *Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008)). Here, the Court finds that ASUS has not satisfied
27  its burden of showing that the original and new products are essentially the same. Although
28  Avago has previously claimed that they are the same, ASUS itself equivocated on this point when

5

1 it opposed Avago's motion to amend infringement contentions in *Avago I*.[1]  Cf. *Vehicle Interface*
2 *Techs., LLC v. Jaguar Land Rover N. Am., LLC*, No. 14-339-RGA, 2014 U.S. Dist. LEXIS
3 107998, at *4-5 (D. Del. Aug. 6, 2014) (stating that "the Defendant was and is *in the best position*
4 to assess the similarities and differences between the accused products in the previous and instant
5 suits[;] [t]his Court denied the Plaintiffs['] attempt to amend its [infringement contentions]
6 because the Defendant argued that functional differences between the previously accused product
7 and the newly accused products would cause it undue prejudice [–] [t]he Defendant cannot have
8 its cake and eat it too") (emphasis added); *see also Fujitsu*, 2013 U.S. Dist. LEXIS 12142, at *10-
9 11 (denying motion to dismiss based on claim splitting "subject to further review"; "[a]t this stage
10 of the litigation, especially in light of [defendant's] stated position as the moving party [that there
11 are differences between the original and new products for purposes of infringement] and the lack
12 of a factual record before the court, this court cannot conclude that the newly-accused products in
13 the New Complaint and the already-accused products in the prior litigation are, in fact, 'essentially
14 the same' for purposes of claim preclusion").

15       Given this equivocation by both parties, the Court – at this point in the proceedings –
16 denies the motion to dismiss based on the claim-splitting theory.  A factual record needs to be
17 developed in order for the Court to determine whether the old and new products are in fact
18 essentially the same.  If, as the proceedings continue, a factual record establishes that the products
19 are essentially the same, ASUS may re-raise the claim splitting theory.  However, by doing so,
20 ASUS also risks opening the door to an argument by Avago that the Court should reconsider its
21 order in *Avago I* denying Avago's motion to amend its infringement contentions because the Court
22 did not consider, in ruling on that motion, that ASUS would be arguing that Avago would be
23 forever barred from raising claims based on the new products pursuant to a claim splitting theory
24 (which would affect the prejudice calculus).[2]  *See Fujitsu*, 2013 U.S. Dist. LEXIS 12142, at *13

---

[1] *See Avago I*, Docket No. 105 (Opp'n at 13-14) (refusing to concede to Avago's claim that the new products were reasonably similar to the original products).

[2] Although the Court previously gave Avago leave to file a motion to reconsider in *Avago I* only on 15 new products (see above), the Court is not foreclosing Avago from filing a new motion for leave to file a motion to reconsider based on the remaining 680 products.

(indicating that court might have evaluated the motion for leave to amend differently if it had been clear that defendant was asking the court to *forever* bar the plaintiff from seeking relief based on the new products, even in a new suit; more specifically, that fact could have led the court to evaluate the issue of prejudice differently).

       2.      Infringement of the '830 Patent (Count 8) – *Iqbal/Twombly*

Count 8 of the complaint alleges infringement of the '830 patent. According to ASUS, the allegations of infringement are too conclusory – simply tracking the language of the patent claims – and therefore cannot meet the plausibility requirement of *Iqbal* and *Twombly*.

For purposes of this opinion, the Court assumes in ASUS's favor (and against Avago's) that Form 18 no longer provides the proper measure for the sufficiency of a complaint. *See Rembrandt Patent Innov. LLC v. Apple Inc.*, No. C 14-05094 WHA, 2015 U.S. Dist. LEXIS 167148, at \*12 (N.D. Cal. Dec. 13, 2015) (noting that, in *In re Bill of Lading*, 681 F.3d 1323 (Fed. Cir. 2012), the Federal Circuit held that, under Rule 84, "the pleading standard set forth in Form 18, not the pleading standard in . . . *Twombly* controls" but, as "Rule 84 has been abrogated, . . . *In re Bill of Lading* no longer applies"); *see also Maybe Pharma Int'l PTY Ltd. v. Merck & Co.*, No. 15-438-LPS-CJB, 2015 U.S. Dist. LEXIS 162912, at \*4-5 n.1 (D. Del. Dec. 3, 2015) (noting that "[a]mendments to the Federal Rules of Civil Procedure taking effect on December 1, 2015 abrogate Rule 84 and the Appendix of Forms, including Form 18" and that, "[u]nder the new rules, allegations of direct infringement will be subject to the pleading standards established by *Twombly* and *Iqbal*, requiring plaintiffs to demonstrate a 'plausible claim for relief'"). But even with this assumption, ASUS does not prevail. Contrary to what ASUS argues, nothing about *Twombly* and *Iqbal* suggests that a patent infringement complaint that largely tracks the language of the claims to allege infringement is insufficient per se. Here, the allegations are not as conclusory as that formerly permitted under Form 18 and has sufficient specificity to provide at least some notice to ASUS. Moreover, this District generally has not required detailed infringement theories until the time that infringement contentions are served, which is typically several months after a complaint has been filed. *See* Pat. L.R. 3-1 (providing that infringement contentions shall be served "[n]ot later than 14 days after the Initial Case Management

7

1 Conference"); Civ. L.R. 16-2(a) (providing that the Initial Case Management Conference, as a general matter, "shall be on the first date available on the assigned Judge's calendar that is not less than 90 days after the action was filed").

### 3. Validity of the '087 Patent (Count 2)

Finally, in its motion to dismiss, ASUS contests the viability of the claim for infringement of the '087 patent on the grounds that the patent is invalid as it is not directed to patent eligible subject matter. *See* 35 U.S.C. § 101. "[P]atent eligibility is a question of law," *In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014), and can be raised in a Rule 12(b)(6) motion. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (noting that, "[a]lthough the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101"). *But see Bancorp Servs., L.L.C. v. Sun Life Assurance. Co. Can. (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012) (stating that "it will ordinarily be desirable – and often necessary – to resolve claim construction disputes prior to a [Section] 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter").

The Supreme Court has endorsed a two-step framework in determining whether there is § 101 patent invalidity. "First, [a court] determine[s] whether the claims at issue are directed to [a] patent-ineligible concept[]" – *i.e.*, a laws of nature, a natural phenomenon, or an abstract idea. *Alice Corp. Pt. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). If so, then the court moves on to the second step, that is, do the additional elements beyond the patent-ineligible concepts (if any) "'transform the nature of the claim' into a patent-eligible application." *Id.*; *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293-94 (2012) (noting that "'an *application* of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection'"; but adding that "one must do more than simply state the law of nature while adding the words 'apply it'") (emphasis in original). The Supreme Court has described the second step as "a search for an inventive concept" – that is, "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to

significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355 (internal quotation marks omitted).

In the instant case, ASUS has asserted § 101 patent invalidity on the basis that the claims at issue are trying to patent an abstract idea. "The abstract ideas category embodies the longstanding rule that [a]n idea of itself is not patentable." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015) (internal quotation marks omitted). The Supreme Court has never "delimit[ed] the precise contours of the abstract ideas category" but has provided some guidance." *DDR Holdings, LLC v. Hotels.com*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (internal quotation marks omitted). For example, "[w]e know that mathematical algorithms, including those executed on a generic computer, are abstract ideas. We [also] know that some fundamental economic and conventional business practices [*e.g.*, hedging, intermediated settlement] are also abstract ideas." *Id.* One district court has indicated that longstanding practices should be deemed abstract because they "are often the building blocks of future research and development. Patents on these practices would significantly impede productive or inventive activity, to the detriment of society." *Enfish, LLC v. Microsoft Corp.*, 56 F. Supp. 3d 1167, 1174 (C.D. Cal. 2014).

The Federal Circuit has also provided some guidance as to what should fall in the abstract ideas category. More specifically, the Federal Circuit has noted that an abstraction is "an idea, having no particular concrete or tangible form." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). Of course, as one district court has fairly pointed out, under this "'broad formulation[,] . . . one could conceivably conclude that *all* process or method patents . . . are directed to an abstract idea.'" *Modern Telecom Sys. LLV v. Lenovo (United States) Inc.*, No. SA CV 14-1266-DOC (JEMx), 2015 U.S. Dist. LEXIS 161793, at *19 (C.D. Cal. Dec. 2, 2015) (emphasis added).

The above indicates that the step one inquiry may be a complicated matter if only because it is not clear what abstract means in the first place. The step one inquiry is further complicated by the fact that it is not always easy to say what a patent claim is "directed to." *Alice*, 134 S. Ct. at 2355.

9

1  The Federal Circuit has indicated that a court must consider the claims "*in their entirety* to
2  ascertain whether their character as a whole is directed to excluded subject matter." *Internet*
3  *Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (emphasis added); *see*
4  *also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015)
5  (stating that, at step one, "it is often useful to determine the breadth of the claims in order to
6  determine whether the claims extend to cover a 'fundamental . . . practice long prevalent in our
7  system'"). The Federal Circuit has also indicated that, in evaluating the claims as a whole, a court
8  must "'identify and define whatever *fundamental concept* appears wrapped up in the claim[s].'"
9  *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir.
10 2013) (case decided before *Alice*; emphasis added). Some district courts have stated that this
11 means that a "court must identify *the purpose of the claim – in order words, determine what the*
12 *claimed invention is trying to achieve*." *Enfish*, 56 F. Supp. 3d at 1173 (emphasis added).

13  Unfortunately, the fundamental concept or purpose of a claim can be expressed at varying
14 levels of generality or specificity, which could then impact whether it is directed to an abstract
15 idea (*i.e.*, the more general the purpose, the more likely to be abstract). *Cf. TriPlay, Inc. v.*
16 *WhatsApp Inc.*, No. 13-1703-LPS, 2015 U.S. Dist. LEXIS 55068, at *27 (D. Del. Apr. 28, 2015)
17 (noting that "the *Alice* step one analysis can turn on how far a court goes in peeling back a claim's
18 limitations while trying to divine what the claim is 'really' directed to"). One district court has
19 implicitly tried to give some more concreteness to the step one inquiry, stating that "[c]ourts
20 should recite a claim's purpose at a *reasonably high* level of generality. Step one is a sort of
21 'quick look' test, the purpose of which is to identify a risk of preemption and ineligibility." *Id.*
22 (emphasis added).

23  In the instant case, the Court concludes that the purpose of the claims at issue is to
24 decompress digital video using a single memory. That is the gist of the invention at issue. Given
25 this purpose, the Court is satisfied that there is no genuine risk of preempting future research and
26 development – *i.e.*, Avago is not simply claiming an abstract idea in the attempt to lay claim to a
27 building block of future research and development; the invention has specific configuration, not a
28 broad abstract idea. *See Alice*, 134 S. Ct. at 2354 (stating that, "in applying the § 101 exception,

United States District Court
For the Northern District of California

we must distinguish between the buildin[g] block[s] of human ingenuity and those that integrate the building blocks into something more, thereby transform[ing] them into a patent-eligible invention") (internal quotation marks omitted) . Because ASUS has failed to establish that the claims at issue are directed to a patent-ineligible concept, *i.e.*, an abstract idea, the Court need not address step two of *Alice* which embodies the inventive concept test.

Accordingly, the Court denies ASUS's motion to dismiss to the extent it is based on a challenge to the validity of the '087 patent. Of course, this ruling does not preclude ASUS from making an argument that the invention claimed in the patent is invalid on other grounds, such as obviousness.

## II. CONCLUSION

For the foregoing reasons, the Court grants Avago's motion to reconsider in *Avago I* (Docket No. 181 in No. C-15-4525) and denies ASUS's motion to dismiss in *Avago II* (Docket No. 16 in No. C-16-0451).

**IT IS SO ORDERED**.

Dated: April 25, 2016

_____
EDWARD M. CHEN
United States District Judge