Pages 1 - 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

AVAGO TECHNOLOGIES GENERAL IP )
(SINGAPORE) PTE. LTD.,            )
                                 )
            Plaintiff,           )
                                 )
    v.                           )   NOs. 3:15-CV-04525-EMC
                                 )          3:16-CV-00451-EMC
ASUSTEK COMPUTER INC. and        )
ASUS COMPUTER INTERNATIONAL,     )
                                 )
            Defendants.          )   San Francisco, California
_____ )   Thursday, October 6, 2016

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
OF PROCEEDINGS**

FTR 10:37 a.m. - 11:13 a.m. =  36 minutes

**APPEARANCES**:

For Plaintiff:          Kilpatrick, Townsend & Stockton LLP
                        1400 Wewatta St., Suite 600
                        Denver, Colorado  80202
                   BY:  **KRISTOPHER L. REED, ESQ.**

For Defendants:         Alston & Bird LLP
                        2828 North Harwood Street, Suite 1800
                        Dallas, Texas  75201
                   BY:  **MICHAEL JOHN NEWTON, ESQ.**

Transcribed by:         Leo T. Mankiewicz, Transcriber
                        leomank@gmail.com
                        (415) 722-7045

Thursday, October 6, 2016

                                                    10:37 a.m.

(Transcriber's Note:  Due to counsel not always identifying themselves when speaking, some speaker attributions were done by educated, and sometimes sheer, guesswork.)

---o0o---

P R O C E E D I N G S

**THE CLERK:**  Calling case C15-4525, and C16-0451, Avago versus ASUSTeK.

Counsel, please come to the podium and state your name for the record, and also please state your name before you speak.

**MR. REED:**  Good morning, your Honor.  Kristopher Reed of Kilpatrick Townsend on behalf of plaintiff Avago Technologies.

**THE COURT:**  Mr. Reed.

**MR. NEWTON:**  Good morning, your Honor.  Mike Newton from Alston & Bird on behalf of ASUS.

**THE COURT:**  All right, thank you, Mr. Newton.

There are a number of issues here, and this is almost like a pre-pretrial conference in the sense that there's some things that we need to discuss about how we're actually going to handle this case from here on out.

One thing I want to clarify, it appears that the '730 is not going to be part of this trial, is that right?

**UNIDENTIFIED SPEAKER:** That's correct, your Honor.

**THE COURT:** All right, so that still leaves five patents at issue, and we had set this for a three-week trial, 12 court days, and I, as you may know, I use a clock, a trial clock, and given the trial day that we have and the time needed to select a jury and then also instruct, that works out to 20 hours a side.

And I know some of this -- you know, there's summary a judgment motion pending and everything else, but assuming we did nothing, we're talking about, it appears to me, 45 claims out of the five remaining patents that are at least currently at issue, and the number of prior art references are many, but probably more than that. So we need to get real here and figure this out.

Now, I had not imposed any narrowing processes in the actual claims prior to this, but probably should have, but it's something we need to talk about, because we're not -- and I don't know, you know, how many products you're intending to put on and feature at trial, but with 20 hours, and you've got both invalidity and infringement, you're going to have to be selective, and we've got to be realistic. And this is also difficult technology that is going to be a challenge for this jury, no matter who this jury is. And so, you know, it's not a 20-minute-per-claim kind of a thing.

So in that regard, I was intrigued by the fact that

you've had these discussions regarding the '663 and the '387 as to the licensing, potential licensing on FRAND terms, and I know there's been one proposal to have a bench trial, bifurcate, then have a bench trial, which has not been -- the proposal has not been accepted, but it does seem to me that those two patents, we should discuss whether there is a way to adjudicate those, to bifurcate those, whether it's going to a special ADR process, magistrate settlement conference, have it tried to the bench or to the jury, or having it arbitrated expeditiously, or some process rather than keeping that within the bounds of this main infringement/invalidity case.

So I'm going to first talk to you about that, if you have any thoughts, because that would at least get us down to three patents.  There's still a lot of claims that are still up there and we still have to do some discussion about that, but I wanted to get your thoughts about what we can do to pursue the possible licensing route for those, '663 and '387.

**MR. NEWTON:**  Your Honor, this is Mike Newton for ASUS. I'm happy to address that.

So we think, like you said, it's not a simple case, particularly with respect to the '663 and '387 patents. They're very difficult technology.  They happen to be the patents where there's the least amount of exposure based on the parties' damages reports, and I don't want to go into the numbers on a public record, but we think the cost of putting on

all the expert testimony and everything you have to do to try efficiently a non-infringement/invalidity case would eat up the damages amount.

So we are willing to take a license to those patents on RAND terms.  We just have a disagreement about what those terms are, and we think it would be -- I won't say simple, because I think there's work to do, but we think this is perfectly within the purview of the Court to consider.

When you have a situation like this, judges have said they're the right trier of fact to decide the issue of what the proper right is.  We'd be willing to be bound, you know, with that rate going backwards as well as going forwards until the patents expire.

We think we could do that in a day or two, probably two days of trial.  On our side, if you wanted to send it off to a magistrate judge, we would be willing to consider that. So that's my thoughts.

**THE COURT:**  For trial?  Magistrate judge for trial?

**MR. NEWTON:**  For those patents, determining the number, correct, and I suppose you'd get out of that, you know, a written recommendation, and then we could oppose and do whatever we need to do, but I think that would be a way -- particularly, I understand your schedule's extremely, you know, busy, so if that was a way to get to resolution relatively quick, we'd be willing to do that, as well.

**THE COURT:** Your thoughts.

**MR. REED:** Well, your Honor, we have, as an update to what's in the status report, we have responded to the requests for a RAND license. We provided them with what we believe was the RAND offer. This was the first request we've received in many years of negotiations on these patents for a RAND offer for just these specific patents.

That's now been provided. We've yet to receive a response back from them on that. Our preference would be to see how that process plays out.

I disagree with Mr. Newton in terms of the purview of the Court, unless there's some type of waiver -- well, first of all, there's no counterclaim for breach of a RAND obligation in this case. There is no claim at issue in this case for breach of a RAND obligation. So there really is nothing to try with respect to the issue he raises in the status conference report.

Second of all, just to be clear on the record, we're not waiving, at this juncture -- I'll discuss it with our client in light of your Honor's comments, but we're not waiving at this juncture our (indecipherable) right to have the jury determine the damages issue with respect to an appropriate royalty rate for the '387 and '663 patents.

Again, we are in agreement with your Honor that we need to consolidate this case, given what the size of it right now. We will do our best to work with Mr. Newton to work out a

compromise to put this case to a more manageable size given the 20 hours per side, but at this juncture we're not willing to stipulate to some separate proceeding on the '663 and '387 until we see what they come back with in response to our RAND offer.

**THE COURT:**  Well, all right.  So it's possible that you may be able to negotiate a resolution, sounds like. I mean, that's still being discussed.

**MR. REED:**  Currently, your Honor.

**THE COURT:**  And if that doesn't happen, then we need to figure out a way to adjudicate.

So we can agree in principle that what we're going to adjudicate is a licensing under RAND.  You know, that's a separate proceeding, whether it's me or we just do it as a separate bifurcated trial, with or without a jury, or whatever process, but it would be good to have an understanding that it is not part of the infringement case.

That's the question, whether we send it to a magistrate judge, keep it here, put it for arbitration, further settlement, you know, negotiations under the auspices of either a mediator or a magistrate judge.

You know, that we can figure out, but I think the threshold question is whether we can peel it off of this case, because that will help.  Then we can kind of concentrate on, amongst the claims that arise out of the three patents at

issue, how we're going to handle that.

MR. REED:  Well, your Honor, we're certainly willing to explore possibilities for doing that.  We see there's some factual issues and perhaps some stipulations we need to get resolved in order to get to that point, particularly establishing them as a willing licensor.  We don't feel that they have -- right at that point, where they have acknowledged that they're a willing licensor.

We don't feel -- again, this is the very first time we've received a request, just in the last weeks, for a RAND offer on these particular patents.  So there's a distance we need to go.  We're not averse to the idea of finding some resolution between us and finding some resolution that simplifies the matters before the Court, but as this point, I don't think we're in a position to say what that resolution is.

THE COURT:  Right.  How much -- yeah.

MR. NEWTON:  Just briefly, to respond to that.

So I don't think we're going to resolve the number. We're a factor of 32 apart.  I don't think we're going to negotiate that.  So as far as making an offer, we've tried to negotiate for a portfolio-wide agreement for now it's six years.  We haven't reached that.

So we're now at a point saying, well, with the patents-in-suit, what are we going to do, and we acknowledge

that two of them, the '663 and '387, are standard essential, and we want to get that resolved, and we don't believe as a matter of law that we need to allege a breach of contract to get to the point where it's the Court's obligation to decide as a matter of contract law what the RAND rate is.

And so we do think it's an issue under the existing case law that says the Court should decide it as opposed to the jury.

THE COURT:  Well, all right.  How much time will you need before you can figure out, number one, whether it's going to be a resolution, if not on the actual terms, on a process?  Because we need to know that sooner rather than later, as we're barreling towards trial, here.

MR. NEWTON:  Your Honor, Mike Newton again.  I think we could have it resolved by the time we come back here on November 2nd for the summary judgment hearing.

MR. REED:  We must really endeavor to do that, your Honor.

THE COURT:  Okay, which is something else I want to bring up.  I am -- because of scheduling issues, I may need to move that date, and I'd rather move it forward rather than backwards by a couple of days, and I want to check with you about the 28th, which is a Friday, and I can specially set all the motions as well as this discussion for the October 28. I just want to make sure that's not a problem with you.

MR. REED:  Your Honor, actually, it is a problem, as I'm presenting a seminar in Tokyo on that day, on the 28th, and are responsible for a portion of the arguments that will be taking place on the 2nd.  So we would ask for the Court's indulgence not selecting a date prior to the 29th, I return from Tokyo.

THE COURT:  Well, there are not a lot of choices in there.  I don't want to move it back into November, like, 7th or -- I forget what other dates there are during that week, because if anything, I also want to talk about moving the pretrial filings up, because right now, the pretrial filings are set for just before the holidays, and I do want to talk to you about what kind of volume we're going to be expecting in terms of pretrial filings, but, you know, we're very compressed as it is.

So I don't know what to say.  I don't have -- and you're gone the whole week, I take it, of that October, or the better part of that week?

MR. REED:  That's correct, your Honor.  I'll be in Shanghai the previous part of that week and then Tokyo the latter part of the week.

THE COURT:  This is for a seminar, you say?

MR. REED:  I'm presenting two intellectual property seminars, in both cities.

THE COURT:  Well, you know, I understand how important

those are, but right now I don't have any choice, and I hate to do it to you, but this case, given the magnitude of this case and the pressure, the time pressure that we're under, I don't see any -- I don't have any other date.  So --

MR. REED:  We'll make accommodations, your Honor, and figure out what we need to do, then.

THE COURT:  So let's do that now, Betty.  Let's set the hearing on all the motions for the 28th, at -- what did we say, 10:30?  Okay.

All right.  So I do want the parties to meet and confer to talk about what we're going to do about the '663 and the '387 as an alternative to including them in the infringement/invalidity trial.

That still leaves the question, when I look at your list, that still leaves something like 24 -- and assuming the '730 is not part of this case, that's still a lot of claims, and I haven't counted the prior art, but we need to talk about what's realistic here, and how many products you've going to be putting on trial.

So I'd like to hear your thoughts about, knowing you've got both phases of the case, invalidity as well as infringement, and you've got 20 hours apiece, what is a realistic approach.

MR. NEWTON:  Your Honor, this is Mike Newton again, speaking for ASUS.  I think we could cut down the claims

asserted to certain representative claims.

I think on products, whether they're going to put on a lot of products, I think, you know, one representative product probably works, I think, on most. We'll have some issues about scenario one, scenario two stuff, but I think, for the most part, we won't chastise them about having to do product by product by product. I think we can say, hey, this particular product's representative, and go with that.

As far as the prior art, if those three patents are in suit, the '148 patent is, at most, a couple of prior art references, and if they drop claims or pick particular claims, that may drop down to one.

I will say, on the non-infringement side, to the extent they press their doctrine of equivalents argument, we do have a reference that we think is, you know, dead-on, and so that would introduce a little complication there.

On the '087 patent that deals with the single memory, there's a patent that's front and center there that's in the IPR, so I think that's really a one-patent invalidity argument.

And then the '830 patent is primarily one article by the inventor himself, where we think they're reading into the prior art, so I don't think that would be that complicated on the prior art front.

THE COURT: So it sounds like, with respect to at least those three, there's one key, maybe two references.

**MR. NEWTON:**  Right, your Honor.

**THE COURT:**  Not the 12, 15 or whatever that's listed in your contentions.

**MR. NEWTON:**  Yeah, and I think our expert reports, I think we submitted those, they're pared back a bit and it looks complicated when you see it all, but it is just a few references.

**THE COURT:**  What are your thoughts about representative claims in --

**MR. NEWTON:**  No, we would do some reduction, we should be able to take some reduction, have representative claims on this.

As far as the (indecipherable) number, I think we probably cut that number down by 50 percent, maybe a little more, if we have an agreement that certain claims are representative.  There is some redundancy in the some of the claim elements, et cetera, cross-claims that could be worked out with respect to representative claims.

In terms of products, I think we may be pretty close to their -- the way the expert reports have evolved in this case, there certainly hasn't been -- not every product has been evaluated.  There's certain features that are common across these products.

As we're coming to an agreement on representative products, I don't suspect it should be an issue.  In fact,

I think we may, again, already be close to their, based on what I've seen in the expert reports.

So I think by having two, maybe at least three, per patent, on their representative products, you know, I have to go back and review just to confirm with my team, but it should be a reasonable estimate at this point.

Not to beat the '663 into the ground and '387, but that does have code of -- I don't want to name the suppliers, but a few different suppliers, and the code is, in our view, substantially different between the suppliers.  But if that's out of the case, I agree completely with Mr. Reed, it should be relatively straightforward.

I think there's reads against two operating systems, but, you know, those were pretty straightforward.  I mean, we can do one operating system and then the other.  I don't think that would be that complicated.

THE COURT:  Well, so if you -- you mentioned cutting the claims by, you know, a half, roughly.  That would get it down to about -- of the three, assuming that we find a venue for '663 and '387, for the '887, the '148 and '830, right now there's technically, I think, 24 or something.

So it sounds like we can get that down to 10 or 12 claims?

MR. NEWTON:  That would be our intent, your Honor, that's correct.

**THE COURT:**  And you think two or three --

**MR. NEWTON:**  Yeah, with some agreement that these are representative, that they're not just foregone.

**THE COURT:**  Do you foresee any problem in that regard?

**MR. NEWTON:**  I do not, your Honor.

**THE COURT:**  And you're thinking two or three representative products per patent, so there would be --

**MR. NEWTON:**  Average across.  There may be less on one and looks like more on the other, but average across, that would be my assumption at this point.

**THE COURT:**  That would be less than 10 products.

**MR. NEWTON:**  If the '387 and '663 get resolved in advance, correct.

**THE COURT:**  Right, right.  Well, and that's sounds a lot more do-able, given the number of hours and given the complexity of the nature of the patents here, that that makes it a much more manageable situation, it seems to me.

All right, well, then I'm going to issue an order out of this that defines those parameters, and let you work out exactly which ones and exactly how you want to proceed.  Now, if there's a problem, we can revisit that at the time of the pretrial conference, but I do want to, you know, get the parties focused now on what exactly we're going to be doing as we go through this process.

Will that obviate any of the -- you've got six or

seven motions now pending on the -- now on the 28th.  If we were to do this narrowing, would that obviate any of those or are those all still in play?  Because I haven't, frankly, looked at all of them.

MR. NEWTON:  Your Honor, if we backed out the '663 and '387 patents, you'd get rid of two-fifths of the motion on our summary judgment motion, you'd get rid of one of their *Dauberts* and our response.  So I think that would reduce the load in that regard.

I think the other agreements won't.  I mean, I do -- you hear this all the time, but we think we have pretty strong non-infringement arguments on the three patents that remain.

THE COURT:  Right.

MR. NEWTON:  So I don't think that would reduce the load in that context, and then we also do think, in the claim construction process, on our *Daubert* motion on Dr. Katti, that it is important to understand whether the, you know, claims cover what they say they do and what we say they don't.  So that one's not going to come off the table, I don't think.

THE COURT:  All right, and your thoughts?  Do you agree with that?  It sounds like --

MR. REED:  I'd agree with his assessment.

THE COURT:  All right, well, I know you say that you hope to have some agreement on process with respect to the '663 and the '387.  If you would let me know maybe a week before,

just give me a status report on how things are progressing in terms of, you know, your discussions about a resolution process of those two, that would give us some help on the -- where we spend our time in concentrating.

Now, the pretrial filings, I need to advance that to give us -- well, let me ask you, in terms of what you're contemplating.

Assume we're going down this road and we resolve the various *Daubert* and summary judgment motions that you have here.  Do you -- what do you anticipate in terms of pretrial filings that -- beyond these normal trial briefing, jury instructions?  Are you expecting a lot of additional motions *in limine* or other special things that have not been already raised?

MR. REED:  From plaintiff's perspective, your Honor, we are not anticipating a large number of motions beyond what's already been raised.  Most of the key issues have been raised already in the context of *Daubert* and summary judgment.

THE COURT:  Okay.

MR. NEWTON:  I think that's correct, your Honor. I think our motion*s in limine* would be the typical ones you see in every case.  You know, it will be one motion.  Hopefully, we can agree on most of them ahead of time.  And so there may be a few issues.

I've never litigated with Mr. Reed, here, so I don't

know, from an evidentiary standpoint, you know, how hard they're going to be on the Rules of Evidence, but hopefully, we've worked well together in the past, we'll do it here and hopefully resolve any authentication-type issues well in advance.

MR. REED:  Agreed, your Honor.  The track record so far is very positive in this case, in terms of the parties cooperating on discovery-related issues.

THE COURT:  Good.

MR. REED:  And I have no reason to believe that won't continue.

THE COURT:  All right.  Then I'm going to ask that the pretrial filings be advanced by one week, to the 13th. Obviously, that puts a premium on us to get our decisions out on the various motions because you need that, obviously, in order to complete your pretrial filings, but that would make it -- have all rulings ready by the time of the pretrial conference in January.

MR. NEWTON:  And that's December 13th --

THE COURT:  Yeah.

MR. NEWTON:  -- correct?

THE COURT:  I could move it up to November, too. Yeah, December 13th.

There's a question about claim construction, the need for separate claim construction on the terms that have now

arisen in terms of the context of the motions, and I'm not inclined to spend time to do a separate formal claim construction process.

You know, there's -- I would expect that we can render whatever construction is necessary through the briefing process, but I do want to reserve the right to perhaps require supplemental briefing, or if we need some additional help in that regard, we may order some additional supplemental briefing if there's something specific, and if really necessary, if we need to do a short tutorial or something.  I don't think that's going to be necessary, but I don't want to, given the time constraints, I think we just barrel ahead with this and work off of your respective briefing.  If we need more, we can pinpoint exactly where we need some additional information.  So we won't have a special claim construction issue, or process.

Now with respect to the various motions, we may have to get those out in a series, seriatim.  I don't know if we're going to do them all at the same time.

Are there some, in terms if your preparation, that if you'd have your druthers, that we get out sooner as sort of a first priority?  I'd like to know what your sense of -- I mean, I assume summary judgment at the top of the list, or...?

**MR. REED:**  From our perspective, the summary judgment we file would be top of the list, your Honor.

**THE COURT:**  Okay.

**MR. REED:** We're filing two motions, one summary judgment, one *Daubert*, and *Daubert* pertains to the '663 and '387 patents. Actually, it's the '663 patent. No, actually both, excuse me, and given our conversation today, I think we would put that at lower priority, and of course, the summary judgment --

**THE COURT:** Yeah, fair enough.

And then ASUS?

**MR. NEWTON:** Your Honor, I think for us it's the non-infringement on '148, '087 and '830. And I hate to pile on, but also Dr. Katti's testimony about the claim construction, I think that's an important issue, as well.

**THE COURT:** Okay. All right, and then Mr. Swinehart and Dr. Acton, I mean, we'll get to those, but that's lower on the list than what you've just mentioned. All right, that's helpful, thank you.

There's the request or the suggestion about staying, because of the IPR, you know, given where we are, and the hearing is not until May, is that right, on the '148 and the '087?

**MR. NEWTON:** Correct.

**THE COURT:** I am not inclined, when you look at the various factors that we're supposed to consider in this stage of this case, because that would just, obviously, completely screw up the trial and everything else. If it were close in

time, we could do something, but that would -- it's too disruptive at this point.

**MR. NEWTON:**  Understood, your Honor.  I just, at one point, I want to make -- the granting of the petitions was just, I guess now two months ago.  It was in mid-August.  We have not moved to stay because we think this case should go away in summary judgment on those two patents for non-infringement.  So we do want to resolve sooner rather than later.

What I don't want to do is have the Court upset later on and say, Mr. Newton, you had these things, and now I've got an inconsistent jury decision and I've got a PTO invalidating the patents.

**THE COURT:**  And we know what a terrible outcome can --

**MR. NEWTON:**  I just want to give everybody fair warning, we would move at that point to stay the case but, you know, fair enough, I wanted to get your insight, and I appreciate that.

**THE COURT:**  All right.  And with respect to supplementing the invalidity expert report, that's just been kind of now sort of raised in the context of motions.

I do think that if you want to pursue that, I'd like to see something teed up a little bit more formal.  I don't think we have to do it as a formal motion, *per se*; maybe do a joint letter that lays out precisely the respective positions.

I don't want to do a 35(a) notice motion. Just do a joint letter that zeroes in on exactly your arguments and counter-arguments on this, in a relatively precise matter. We'll resolve that.

You know, my inclination generally is that if there is reasonable cause, something that there's reason not to have included the opinion or the information sooner and there's time still to take that into account and deal with that by way of, if there needs to be a supplemental deposition or rebuttal something, I mean, that's my preference, to work it out that way and to get to the merits, so long as there's time and there's reason why we're at this position, there's a reason.

So the other thing to do is, you can also stipulate, work out some kind of process, whether it means allowing this on the condition of that, you know, something else gets filed or there's a short supplemental deposition focused on the new material, whatever it is, I'd encourage the parties to meet and confer, but if you can't, send me a joint letter and I'll resolve that.

**MR. NEWTON:** And we may be able to work it out. I mean, they added a DOE, doctrine of equivalents argument, in their expert report. We decided not to object to that, but we'd also like a little reciprocity on the other side to say I now want to address this direct. So I think we may be able to work that out. If not, we'll take your guidance and submit

a letter.

THE COURT: All right. You know, you could do that in the next two weeks, if you are going to submit a letter.

MR. REED: Will do, your Honor.

THE COURT: All right, and then ASUS has asked for additional prior art discovery, but there I didn't see an explanation why that could not have been done earlier. I mean, discovery has closed.

Again, if you -- I don't know what you've done in terms of meet-and-confer, whether that could be part of this equation. That one, I'm just giving you a forecast: If it came to me, you know, my first question would be, you know, why wasn't it done? Is there a reason?

So that may be a slightly tougher climb, but on the other hand, you know, depending on the scope of it, I'm interested in kind of getting the merits done. So why don't you include that in your meet-and-confer letter process.

MR. NEWTON: And I know there's a lot of people waiting, you're busy. Just to address that quickly, we think they changed their infringement theory significantly on this one, and this is one where we did say, file the motion, we have objected.

You know, this is going to dovetail with a lot of the arguments on the 2nd, and then we have a follow-on argument on the 17th about whether to get to amend, but we think they

changed their theory, and in view of that, we think if we'd known that theory, we would have followed up with some prior art.  But we'll discuss that.

THE COURT:  Okay.

MR. REED:  Your Honor, just so it's clear, there was no new theory here.  The only difference is which source code ended up showing the functionality.  Same theory, just different source of -- third party source code that we could not have had in advance, or known exactly where we were going to find it.  We found it, same theory, no reason to have more prior art here.

MR. NEWTON:  We won't resolve that one today, your Honor.

THE COURT:  It doesn't sound like it will resolve today, okay, but again, I ask you to be practical and see -- you know, I don't know exactly what is involved here, but I'd like you to meet and confer and see if you can resolve that, and if not, I'd have to look at the issues you've just talked about.

All right.  So I think I've accomplished or raised the issues I want to raise with you.  I think the main thing is, I really would like the parties to figure out a resolution process for the '663 and '387 outside of this trial, and I'm willing to, you know, if you can't agree on a different process, whether it's by negotiation or a different venue, I'm

willing to bifurcate and try this, but on a separate trial, not, you know... And if that sounds like a short trial, we can schedule that a lot more easily than a three-week trial.

But if you're willing to stipulate to a magistrate judge to try the case, you can be guaranteed an even quicker resolution, or whatever process you choose.

And with the narrowing and focusing on a lower number of discrete claims, products and prior art, I think this will be a much more focused use of the jury's time, as well.

So I will see you on the 28th, is the next time, or is it -- we have something?

**MR. NEWTON:** Twenty-eighth is next.

**THE COURT:** Right. Okay? Okay.

**MR. NEWTON:** All right, thank you, your Honor.

**MR. REED:** Thank you for your time, your Honor.

Thank you, Ms. Lee, for helping us schedule all this stuff.

**THE COURT:** Let me just ask one... Do you have -- are there any other global ADR -- I know you went before JAMS back in 2015. Any more things scheduled? Do you have any more discussions with a mediator?

**MR. NEWTON:** I don't think there are, your Honor, and I actually think we can sidestep the mediator for most of this now, for most discussions, but we are relatively far apart on a global deal.

**THE COURT:** All right.  If you think at some point it would be helpful to use any of our processes, including a magistrate judge settlement conference, let me know and I can arrange that.

**MR. NEWTON:** Will do, your Honor.

**THE COURT:** All right, and I'll bring it up next time we see each other, see if you have any more thoughts in that regard, okay?

**MR. NEWTON:** Thank you, your Honor.

**MR. REED:** Thank you, your Honor.

**THE COURT:** Thank you.

                                                    11:13 a.m.

---o0o---

**CERTIFICATE OF TRANSCRIBER**

I, Leo Mankiewicz, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_____   10/10/2016

Signature of Transcriber          Date