**Pages 1 - 16**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN, JUDGE

AVAGO TECHNOLOGIES GENERAL IP  )
(SINGAPORE) PTE. LTD.,         )
                               )
          Plaintiff,           )
                               )
   VS.                         )   **No. C 15-4525 EMC**
                               )
ASUSTEK COMPUTER INC. and ASUS )
COMPUTER INTERNATIONAL,        )
                               )
          Defendants.          )
_____)   San Francisco, California
                                    Wednesday, October 19, 2016

<u>**TRANSCRIPT OF PROCEEDINGS**</u>

<u>**APPEARANCES (By telephone):**</u>

For Plaintiff:
                    KILPATRICK TOWNSEND & STOCKTON LLP
                    1400 Wewatta Street, Suite 600
                    Denver, Colorado 80202
               BY:  **DAVID E. SIPIORA, ESQUIRE**

For Defendants:
                    ALSTON & BIRD LLP
                    2828 N. Harwood Street, Suite 1800
                    Dallas, Texas 75201-2139
               BY:  **MICHAEL JOHN NEWTON, ESQUIRE**

**Reported By:  Katherine Powell Sullivan, CSR No. 5812, RMR, CRR**
               **Official Reporter**

**Wednesday - October 19, 2016**                    **10:06 a.m.**

**P R O C E E D I N G S**

**---000---**

THE CLERK:  Calling case C 15-4525, Avago Technologies versus ASUSTeK.

Counsel, please state your name for the record and also please state your name before you speak.  We do have a court reporter here.

MR. SIPIORA:  Good morning, Your Honor.  This is David Sipiora for plaintiff Avago Technology.

THE COURT:  All right.  Good morning, Mr. Sipiora.

MR. NEWTON:  Your Honor, good morning.  Good morning, Ms. Lee.  This is Mike Newton for defendant ASUSTeK.

THE COURT:  All right.  Thank you, Mr. Newton.

I asked for you to get on the call because I received your supplemental joint and status conference report indicating you have not been able to reach an agreement on a mechanism, and I wanted to explore with you further.  I'm trying to understand what the problem is here.

Is this solely a question of jury versus bench if we go -- if we deal with these two patents under a RAND royalty analysis?

MR. NEWTON:  Your Honor, this is Mike Newton.

From ASUSTeK's perspective that is the dividing line.  We are willing to try just the RAND issue and also, I guess,

willfulness before the bench.  But if we're going to do everything before a jury, we don't want to admit infringement and not try the validity part of the case.  We want to, you know, do it all if it's before a jury.

THE COURT:  So if it were a bench trial, the bench trial in your view would be focused on determining the proper royalty rate on RAND terms and the question of willfulness?

MR. NEWTON:  Your Honor, again, this is Mike Newton.

So what I proposed to Mr. Sipiora this morning was since ultimately the Court decides whether to enhance, we could put on the evidence about willfulness and the Court could indicate whether they thought an enhancement was warranted if a jury were to find willfulness.  And we would actually forego going back and doing things before the jury.

If the Court thought enhancement was warranted, you know, it would make a willfulness determination and decide what the enhancement or damages factor would be based on willfulness only.

THE COURT:  Based on a willfulness finding that might be rendered in the -- by the jury in the main case?

MR. NEWTON:  No, no.  By the judge just hearing the evidence relating to these two patents.

THE COURT:  Oh.

MR. NEWTON:  So the willfulness as to the other three, we would let that go to the normal case.  But on the bench

trial, if Avago wanted to put on the evidence of willfulness before the judge, we would be -- if the judge decided that he or she thought there was willfulness and that an enhancement was warranted, we would be willing to be bound by whatever that judge determined.  Because, in our view, you know, the jury is going to find willfulness.  Whether there's any enhancement or award of attorneys' fees is ultimately something the judge decides.

THE COURT:  All right.  And in the process you would waive any claim of invalidity; right?

MR. NEWTON:  If we tried it before the bench, that's correct.

THE COURT:  If it's not tried before the bench, then you wanted -- basically the difference is invalidity would come back into the picture.

MR. NEWTON:  And infringement.  We wouldn't go past the issue of infringement.  We would want to show that we really do have a good faith noninfringement position and present the entire, you know, story to the jury about how we got where we are.

THE COURT:  All right.  And so what -- what's Avago's position in light of this offer to have willfulness determined by the bench as part of a bench trial?

MR. SIPIORA:  This is David Sipiora for Avago.

Two things I would like to say.  One, it's not just a

jury-bench issue.  It's also a question of efficiency and costs.  The most expensive thing in a case is trying it.  And Mr. Newton's proposal would have us trying this case twice.

The evidence that goes to what he just described would be substantially overlapping.  We would have -- the important thing to note here, there isn't any counterclaim or issue of breach of contract.  A lot of times RAND comes up in the context of a breach in RAND obligations, third-party fiduciary theory, and then there's a breach of contract claim.  That isn't the case here.

RAND only comes in as a mitigating factor on a damages claim.  It has to be [indiscernible].  And all of the evidence we're putting in on damages, the actual -- our entire [indiscernible] tied together in one expert based on a particular license and different analysis that flows from that.

That analysis would be completely replayed then again in a separate trial.  We would be doing it all over again.  Their expert; our expert.  And, in addition, technical experts would have to testify again, as they would in a normal case, because we have to support our positions on the value of the technology.  So we'd have experts also testifying, technical experts, at least two, maybe three total on that.  So it would be substantial overlap.

Then, on top of that, willfulness involves fact witnesses.  So we would have our fact witnesses and their fact witnesses in

a separate trial.

For all those reasons, we're talking about the substantial additional expense.  And we don't wish to do that.

Second, however, what I would say is --

THE COURT:  Well, before you go any -- before you go any further, let me -- let me see if I understand.

The overlap, even though if we were to bifurcate, we would only be talking about the three other patents at issue in the first trial.  What is the -- what is the overlap with respect to the evidence as to those patents as opposed to the '663 and the '387?

MR. SIPIORA:  Well, I'm looking at the variance -- if you're looking at savings, you're not going to have to do certain things.

If we did the trial with all five patents, we would have one damages expert per side and the technical experts with respect to the -- on the issue of damages because the damages expert is relying upon technical information which the jury needs to hear.

So if the case is tried altogether, think of it this way: We're going to have damages experts on each side and one or maybe two technical experts on each side -- probably one -- let's say, supporting the technical analysis with respect to the patents.

If we didn't try the '663, we would not put on evidence

with respect to that part, the technical part with respect to supporting damages on those particular patents.

We would simply be moving, though, over to the other case because if we did a bifurcation and did the damages -- damages -- the RAND case, that's the exact same expert report, same expert, the same framework.

All that would have to be put on again and be duplicative of setting the table of what a reasonable royalty is; what the hypothetical negotiation looks like; what's reasonable under the circumstances. And then the same technical experts, which we thought we were avoiding having to put on, we would have to put on there because they would be supporting the damages assessment, the assessment of what the value of the patents are. So we wouldn't be [indiscernible] moving from one place to another.

In addition, I would say on the willfulness, which we've tried to work through, willfulness involves briefly on our side six years of negotiations, multiple offers, et cetera, et cetera. That will all play out on the willfulness case in the case-in-chief. And then their same evidence then will be played again, same witnesses, their witnesses and our witnesses, if willfulness is done in the bench trial.

So we'll actually do the same evidence completely twice with respect to damages and willfulness with the bifurcation, really getting no savings whatsoever. We will be doing it

twice.

**THE COURT:**  Well, let me ask you, if this is -- if this is done by a bench trial, if we were to bifurcate and do the RAND trial as a bench trial, there's no reason why you couldn't stipulate that the testimony in the first trial would be -- could be considered and used and incorporated in the second trial.

I mean, why would that -- for instance, if I were the finder of fact, you wouldn't have to do it all over again because I'm sitting there listening to it.

**MR. SIPIORA:**  Well, you wouldn't be the finder of fact on the damages piece; the jury would be.  We would want the jury to -- first of all, we want a jury.  That's a separate issue.  [indiscernible] there are two reasons.  One is efficiency; the second is jury.  We're not waiving our right to a jury trial our the damages claim.  And the RAND is just a defense to damages.  They haven't raised --

**THE COURT:**  No, I understand that.  I wasn't addressing -- I wasn't addressing the jury.  That's why I asked my first question.  But you started raising the questions about efficiencies and costs and how this would be duplicative and end up being more cumbersome.

And it's still not clear to me, particularly if we were to bifurcate and it were a bench trial, I could -- you know, I've sat through the first trial.  We could simply incorporate or

import the evidence into the record for the second case.  So I don't see the cost problem.

Now, the jury -- the jury is a different question.  If you're not willing to waive a jury no matter what, no matter what that -- no matter what the circumstances, irrespective of costs, well, then, I guess that's your prerogative.  That's why I asked the first question.

Is that the nub of the controversy here?

**MR. SIPIORA:**  It's both.  My client is not willing to waive the jury trial.  That is -- that is the discussion.  But there is the cost factor.

Let me find it.

If the damages expert for the five patents -- I'll just give his name.  Mr. Swinehart, he's going to testify about licensing and the value of these patents in the context of technology and so forth.  And he's going to basically set forth [indiscernible].

**THE COURT:**  Wait.  You're going to have -- hold on. You're going to have to speak slower because the court reporter is having a hard time hearing you.  You have to articulate and slow down.

**MR. SIPIORA:**  Certainly.  Thank you.  Again, David Sipiora.

So the damages testimony in the case-in-chief, the five-patent case, is there's a framework of what a reasonable

royalty would be in the context of a hypothetical negotiation. That framework consists of a number of licenses and agreements that were made by the parties at different times.  Licenses they've entered into, one in particular, and licenses we've entered into over time that bear on the value of technology in the space.

All of that testimony by Avago's expert and the contrary testimony by ASUSTeK's damages expert will be the same, whether it's five patents or the two patents separate.  There's going to be substantial overlap in that testimony.

And so in a separate bench trial -- and the jury -- and the jury has to hear that.  It's going to have -- you can't replay it from the bench trial.  They're going to have to hear all of that live from our expert.  And they're going to hear their expert.  So that's going to be a complete overlap between the two.

The second piece is, each of the experts [indiscernible] damages theory, it's based on the value of the technology relative to alternatives, contributions to the art, what's the next best alternative.  All of those technical issues, our damages experts are unquestionably not qualified to opine on. They must rely upon the testimony of technical experts.

Those technical experts will have to testify in a separate trial, the bifurcation trial, just as they would in the -- in a standalone five-patent trial.  So there's nothing in savings

there.

We're going to be doing that either way.  Whether we do it in the five-patent case or the two-patent case, they have to testify again.  So there is no savings in that respect.  We will be doing it again; have to ramp them up, make them available.

THE COURT:  Wouldn't the technical -- wouldn't the technical experts have to address each of the five patents, I mean, in terms of the criteria you mentioned?

You're saying there's no difference -- there's no difference in a trial of two patents or three patents versus five patents?  Wouldn't there have to be specific testimony as to the contribution of technology and the value, et cetera, of each patent at issue?

MR. NEWTON:  Your Honor, Mike Newton.

MR. SIPIORA:  Can I answer that question?

To just answer that question, yes, Your Honor.  All I'm saying, if you think about the five patents and specific technology with respect to those five patents, all the bifurcation will do is move the testimony on two of those patents from one trial to the other trial.

There will be no savings.  We will be doing the exact same testimony, just moving it from one trial to the other trial.  There is no efficiency to be made.

THE COURT:  So what is your --

**MR. NEWTON:**  Your Honor --

**THE COURT:**  Hold on.

**MR. NEWTON:**  Okay.

**THE COURT:**  What is your proposal, Mr. Sipiora?  I guess if you say it's got to be a jury trial and there's going to be no savings, so you're -- it sounds like you're opposed to any bifurcation, jury or not.  So I guess I don't understand any -- what are you proposing other than trying the case as five patents?  Are you proposing any alternative?

**MR. SIPIORA:**  No, because we want [indiscernible] jury trial.  And so the answer is no, we're looking for ways to streamline the existing five-patent case.

And the truth is that their proposal, if you put out ten claims, ten products, references, we're just about there right now.  We've exchanged emails on that.

Your proposal gets us -- well, it's going to take an order, gets us to where we have [indiscernible].  We can get this done with 20 hours per side, with ten products, ten claims and six product references.  And we're very close to that as of this morning.

We're down to ten claims.  We're between six and eight prior art references.  And I think we're proposing five products.  They're saying maybe they need ten, maybe a little bit more.  But we're very close.

So my point of all this is -- and importantly for us it's

one trial.  So we're not having the expense of a second trial. We can do it in the parameters of one trial and get it all done within the framework you've described.

THE COURT:  All right.  So all five patents can be done within the framework that I prescribed?

MR. SIPIORA:  Yes.  And I just want to add one thing, just to note, the two additional patents are parent and child. So although we talk about five, just for critical reference, there are -- there are -- the technology to the jury is going to be really one, more effectively.  I mean, there are more claims, but the technology won't be that much more.  It will be one more patent effectively added.

But bottom line is yes, what you've proposed we've been working toward.  And as of this morning Mr. Newton and I exchanged emails where we made -- we've got to work out the details, but ten products, we think we can get to ten claims. And then we're wrestling on between six and eight prior art references.

THE COURT:  All right.  What --

MR. NEWTON:  Your Honor, this is Mike Newton.

I'm not sure if we're agreed on the ten products.  The '663 and '387 patents, there's some nuances there.  So -- but it's not going to be a lot more than ten.

On the prior art, I think we're probably about eight, if we try all ten, depending on what happens with some of the

post-trial motions.

But going back to some of your points about bifurcating, I do think there might be some benefit from a jury's perspective, which is understanding the differences, because we, at least on the defense side, are going to say you don't value these things altogether.  And the technology matters.

So when we're looking at, you know, these MPEG standard essential patents, there's going to be one analysis, and we might look at one set of agreements.  You know, for other patents we might look at others.  So we don't think it's one-size-fits-all, even if Avago does.

THE COURT:  All right.  Well, it sounds like Avago -- it's not just a jury-versus-bench question.  It is a bifurcation versus nonbifurcation question.

And it sounds like they're not interested, A, in a bench trial, 2, in bifurcation.  And if that's not the way it's going to go, I don't know -- unless you just simply settle those claims, it's -- I don't see how there's any place where there's going to be any meeting of the minds on an alternative dispute resolution mechanism.

MR. NEWTON:  That's right.

THE COURT:  And what about -- let me ask you, in terms of just settling those claims, have you had -- have your clients had any further discussions along those lines?

MR. NEWTON:  Mike Newton.

The clients have not, but the lawyers have.  I mean, we're just -- we're, you know, 32 orders of magnitude apart really.  So I don't think we're going to resolve that piece of it.

THE COURT:  All right.  So it would not be useful to, for instance, have you employ the services of a magistrate judge or a neutral in trying to settle any or all of these claims at this point?

MR. NEWTON:  Your Honor, again, Mike Newton.

I don't think so, at this point, that would move things along.  We proposed the RAND trial as just a way to get some definition on what the right value was.  But it doesn't sound like Avago wants to agree to that.  So I'm not sure a neutral or a magistrate judge from ND Cal would help us without some kind of a decision being made.

THE COURT:  All right.  Then sounds like we're going to proceed.  At this point my -- my order setting forth the limits applies, because of your inabilities to separate out the '663 and the '387, you -- you think you need an adjustment, you're going to have to ask the Court for permission to deviate.

But right now the numbers I set forward are going to stick.  And that means even if you're trying all five.

MR. NEWTON:  And that goes for invalidity on the six reference as well?

THE COURT:  Well, that one I will hear.  I'm a little

bit more open to that because that was key to the representation that there would be, you know, one or two prior references.

I think the assumption there is -- is that there was only going to be three.  But I -- it's going to have to be demonstrated to me that there's good cause to decrease that.

But I will look at that if -- you know, if you -- you think it's -- if the parties believe that that's going to be another issue.  But I'm not going to exceed, at this point, the ten claims or the ten accused products unless you make a very strong showing to me that it's absolutely necessary.

So the working presumption -- my presumption is that these numbers stick.  If you want relief, you're going to have to demonstrate to me necessity.

**MR. NEWTON:**  Understood, Your Honor.  I think, you know, some of it will come out, I think, when we discuss the motions to amend infringement contentions and the *Daubert* issues that are raised.  I think we'll get some clarity there as well.

**THE COURT:**  All right.  Well, then, I guess that's where we'll leave things.

**MR. SIPIORA:**  All right.  Thank you, Your Honor.

**MR. NEWTON:**  Thank you, Your Honor.

**THE COURT:**  Thank you.

(At 10:27 a.m. the proceedings were adjourned.)

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript of what was audibly discernable from the telephone conference of proceedings in the above-entitled matter.

DATE:   Thursday, October 27, 2016

*Katherine Sullivan*

_____

Katherine Powell Sullivan, CSR #5812, RMR, CRR
U.S. Court Reporter