**Pages 1 - 18**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

AVAGO TECHNOLOGIES GENERAL IP   )
(SINGAPORE) PTE.LTD.,            )
                                 )
          Plaintiffs,            )
                                 )
   VS.                           )      NO. C 16-0451 EMC
                                 )
ASUSTEK COMPUTER, INC. and       )
ASUS COMPUTER INTERNATIONAL,     )
                                 )
          Defendants.            )
                                 )

                           San Francisco, California
                           Monday, November 21, 2016

               **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
                    KILPATRICK, TOWNSEND & STOCKTON LLP
                    1400 Wewatta Street, Suite 600
                    Denver, CO 80202-5556
               BY:  **DAVID SIPIORA**
                    **ATTORNEY AT LAW**

For Defendant:
                    ALSTON & BIRD
                    2828 North Harwood St., Ste. 1800
                    Dallas, TX 75201-2139
               BY:  **MICHAEL NEWTON**
                    **ATTORNEY AT LAW**

Reported By:        Rhonda L. Aquilina, CSR #9956, RMR, CRR
                    Official Court Reporter

**Monday - November 21, 2016**                    **2:09 p.m.**

                    **P R O C E E D I N G S**

                        ---000---

        **THE CLERK:**  Calling case C-15-4525 and C-16-0451,

*Avago versus Asus*.

    Counsel, please state your name for the record.

        **MR. SIPIORA:**  David Sipiora for plaintiff Avago

Technologies.

    Good afternoon, Your Honor.

        **THE COURT:**  All right.  Thank you.

        **MR. NEWTON:**  And Michael Newton from Alston & Bird for

Asus.

        **THE COURT:**  All right.  Good afternoon, Mr. Newton.

    So it seems like the parties agree on a basic structure

that makes a lot of sense, which is basically a way of

facilitating the appeal of the various orders that I entered in

favor of Asus and sort of deferring or folding in what's left

into *Avago II* in some fashion, and allowing that to kind of

await what happens on the main traction here.  But there's a

difference of opinion and an unwillingness or at least

loggerheads over the lack of willingness to drop its

willfulness allegations in the *Avago II* case.

        **MR. SIPIORA:**  Correct.

        **THE COURT:**  And that's where we stand.

        **MR. SIPIORA:**  Well, there's also the issue of the one

claim, Claim One of the '387.

THE COURT: So what does Asus -- what is the proposal? You're saying not certifying the invalidity of Claim One.

MR. SIPIORA: What we propose for the plaintiff, I think the two I think clarifications of what was submitted in light of further reflection. Number one, on the "Winger patents" of the '387 and the '663, those two patents that are still -- that would still be subject to the trial in *Asus I*, our thought would be to move them out and to move them into *Asus II*. We'd have to do it -- we'd want to do it in a *nunc pro tunc* fashion so that we don't lose the damages period if we have to replead them. I didn't make that explicit in the request, but that's what we want to do, number one. With one caveat, Claim One is the only claim that you ruled upon negatively. That's the section 101 motion.

THE COURT: Right.

MR. SIPIORA: And what we would do is just sever that out and have that one claim of that one '387 patent go final in that case in *Asus I* in *Avago* on the first case, and then the rest of the case would roll over as we've described and go into *Asus II*, or *Avago II*, and just be stayed.

So that's where we have a difference of opinion. I understand Mr. Newton's position. He wants to keep all of the '387 case together with the remaining claims.

THE COURT: So the invalidity finding would just

continue as an interlocutory ruling that would sit there until we actually try the '387?

MR. NEWTON:  That's correct, Your Honor.  And part of the thinking is we're going to be before the Federal Circuit, and while they don't have page limits, they effectively have word limits, and trying to argue everything and educate that court on everything this Court has been already educated on and add in the '387/'663 I think is a lot for one appeal.

THE COURT:  Except doesn't it makes sense -- I mean, that's such a fundamental, essentially 101, the idea of trying the '387, at least Claim One, and leaving -- when you have a chance to get a ruling from the Court on whether, you know, the 101 analysis was right or wrong, if it weren't for the page limit, it would make a lot of sense.

MR. NEWTON:  Yeah.  I mean, it's really the page limit and just trying to educate the Court again.

THE COURT:  What is the page limit that they assigned there?

MR. NEWTON:  I think it's 10,000 words in 14-point font, but I don't remember.

THE COURT:  What does that translate to?

MR. NEWTON:  I think 60 pages, approximately, in 12-point font.

THE COURT:  So your fear is that adding the 101 discussion will take up a lot of room in the appellate

briefing.

MR. NEWTON:  I think it's going to take a fair amount, Your Honor.  Because even going back to the '830, the synchronization, I mean, we spent a fair amount of time in *Markman* trying to understand just this concept between valid and invalid, and so I think you benefited from understanding that.  On the '148 wifi patent, we spent a fair amount of time talking about what modulation was and whether it included putting in a carrier, and then once you add that into context, you understood everything else.  And all that together is a lot to get into an appeal brief.  It's just my feeling and my thinking on it.

THE COURT:  Well, before we get to that, I mean, we have that, and then there's the willfulness issue that divides the two parties.

MR. NEWTON:  And I'm happy to speak to that, Your Honor.

So my thinking there is that, you know, I don't think it would be fair to consider us willful on the patents that we won on, at least -- even if we lose, I think we have a good faith basis for doing what we're doing.

And then I think on the '663/'387, again, I believe we have a good faith basis, but we're now going to stay it for a period of time, and that stay isn't necessarily something that we did.  I'm not sure a jury would understand that, but you're

going to say these people sat around for ten years, and that's going to look bad to a jury if we come back and try it, and they're going to wonder, you know, why did we infringe, assuming we were found to be infringing.

I think there's some prejudice into, you know, not dealing with it now.  It makes perfect sense not to deal with that case now, but I don't want to be found willful because we didn't stop using the technology.

THE COURT:  Well, can you reach a stipulation in advance about, you know, not having the delay factor into the equation as opposed to an all-or-nothing kind of approach?

MR. NEWTON:  I don't know.  We had talked about that briefly on our call, and I didn't know if -- when you came back and said you just wanted to try willfulness, I figured there was no immediate compromise.

MR. SIPIORA:  No.  We offered that.  I think there's a way to do that, obviously.  We can word it in such a way that there's no prejudice in front of a jury, that they understand that the case was delayed because of the judicial process.  I don't see that as an issue.

From our point of view, the opportunity to get this resolved on the '387 in the Federal Circuit, they're going to have the opportunity to see any of the other briefing they want below, obviously, so they're going to have the full record coming up, number one; and number two, we do this all the time.

We can get it briefed within the space allotted.  We're no more pleased with limits on pages than anyone else is, but it can obviously get done.

They have a district court decision from the Central District of California to read, as you know.  They have your decision to read with, you know, extensive analysis.  That's not going to be a problem from our point of view.

**THE COURT:**  Why don't you stipulate no briefing.  Just give them my order, and, you know.

(Laughter)

**MR. SIPIORA:**  Just give the two opinions and put them on a scale?

**THE COURT:**  Yeah.  Well, I mean, you know, it makes the most sense, especially given I'm taking sort of the value of trying what might come out of the trial on the '663 and the '387 alone, it just doesn't make sense to go ahead and move to try that now or, you know, it just makes sense to see what happens.  And, you know, I have issued substantive rulings, and I think everybody wants to know what the Central Circuit is going to say on all this.

So it seems to me that, number one, the invalidity issue is an important issue; it should be part of any package of appeal to be heard.  Notwithstanding the page limit, it does seem to me if the '387 is going to stay in this case, that that is an issue that ought to be -- since there's an opportunity to

have the Court look at it before it goes to trial, it ought to happen; and two, if the willfulness concerns stems from what we're proposing to do, and that is to defer, and sort of sever and combine and delay, that we could hopefully reach a stipulation that we would make clear to the jury one way or the other, whether by instruction or directed by the Court or something, and that sort of explains why the jury should not hold it against either party the fact that there's been some delay in the process, et cetera, et cetera, it seems like that would make a lot of sense.

I'm wondering whether we should take a break and see if you could talk one more time and see if you can work something out, and then come back.  And if not, then I'll have to figure out what I have to do.  Because it sounds like neither party thinks it makes sense to go forward with *Avago I* on the trial schedule that we've got right now.

So, you know, the alternatives available to the Court absent stipulation, I don't know if it's a Rule 54(b) entry of judgment as to some but not all the claims, or some other process, but I would have to look at that to see what it takes to kind of get this going.  But I'd rather do it with your agreement and crafting rather than the blunt tool of the Court acting unilaterally.

**MR. SIPIORA:**  Well, I'll represent to you -- I have to talk to my client probably to get the right language -- but

I'll represent that I believe my client would be willing to work out the carve-out for the time period of the ruling to the time period of reactivation, that that period there would be no prejudice, words to the effect that because of the judicial process and the need to do an appeal, they should not consider that time as the factor in any determination of the willfulness. So just take that out of the picture and get an instruction on that. And I don't see that that would be an issue at all. I've offered that, and we kind of lost track as a result of the process. But I think that would be very fair, and I think we could do that.

And then, structurally, it seems to me we just separate out that one claim, Claim One, the '387, and you enter final judgment. See, the interlocutory thing, I think, is discretionary; right? So if you just get the final judgment of everything, all of the other claims, and '387 Claim One, and then we separate those out; if we could have a ruling that they get severed out, for '663 and all other '387 claims, and push them over to *Asus II*, and then stay that action, it seems to me that would be feasible. And I think we would agree to that -- I think we could agree to that, and then we would have a clean record and no worries of challenging that. And then we'd get the benefit of the Federal Circuit's rulings, and we'd know where we stand. Because the fact of the matter is that there's substantial overlap on these issues, and let's get it resolved

once.  Because when we come back down, there will be discussions, and we'll know where we stand.

MR. NEWTON:  I'd also say that on the willfulness piece, I understand what you're saying about carving out the period from when we stay to if the case comes back, but I also would say for the other patents that are out, I'd almost like to have you consider a stipulation that we're not willful up until the time that we went -- or, actually, if the Federal Circuit overturns that point, so that I don't have to tell the jury, hey, we had a prior decision, the judge was overturned, and we're in good faith, because that's going to be colossally confusing, and it's going to -- the jury is going to --

THE COURT:  So it affects the other claims, too, this sort of interim period, is what you're saying.

MR. NEWTON:  Yeah.  And also going back.  Because I think we're in good faith through now and through the time of appeal.  Now, once it's overturned, then I may have to deal with, hey, why did we stop using the technology?  But I think up until the time, assuming the Federal Circuit were to overturn anything, I think we're in perfectly good faith and can't be found willful, and this is a matter of law.  So I'd like you to consider stipulating that we're not willful.

MR. SIPIORA:  I can't do that.  I mean, that's a client call.  What I can say is that I know my client would be open to, on the '663/'387 issue because of the delay, that's

reasonable.  The rest of that, just fall where they fall.

THE COURT:  Yeah, I mean, if the Court reverses, that doesn't say anything about willfulness, at least up until the time of my ruling.  I don't know if you're using my ruling as a point of non-willfulness, or are you saying everything prior to that?  I mean --

MR. NEWTON:  Well, so we had a viewpoint that we did infringe, and you validated, I think, with a summary judgment.  So at least our position was viable and in good faith.

Now, you know, going through appeal to that time, let's say it gets overturned and we have to come back.  At that point you may say, okay, starting then through, if you continue to infringe to whenever there's a trial, then maybe you have a small period where you could be found a willful infringer.  But I would say everything before that I'm in good faith.

Now, if you say we're going to try it, then I'm going to be before the jury saying, okay, ladies and gentlemen, here's what happened pre-suit, here's what happened in the case previously:  We won, and so we were in good faith all this time up until the appeal when it got overturned.

It just -- I think that's going to create a strange dynamic, explaining a lot of what happened in prior litigation.

THE COURT:  Well, your point, too, is that the jury will find out what the rulings were at that point, the fact that you were, quote, vindicated at least for some period of

time until told otherwise by the Federal Circuit, and therefore that's a good indication it was in good faith, et cetera, et cetera.  I mean, it's a strong argument on the merits, and I don't know if your client -- whether it's worth, you know, sort of agreeing to that point or not.

I, you know, I understand your point.  On the other hand, at the end of the day, I guess it's your client's prerogative whether they want to still pursue a willfulness claim, sort of notwithstanding the fact that the Court ruled and found in favor for various reasons.

I'd like you to go out and talk about it one more time and see if you can come to an agreement.  You may not get everything you want, and if you don't, to me it still makes sense.  On the other hand, how much are you really giving away? You know, you'll have to have that discussion with your client.

What I'd like you to do is to meet and confer again and see if you can come to an agreement on process and terms.  If not, I have to do something.  And I guess -- I mean, technically, let's say on the '148, I ruled on six -- I forget how many claims did I rule on?

**MR. SIPIORA:**  Four.

**THE COURT:**  Four of the claims.  And I don't know whether there are other -- whether there was any understanding or stipulation that any other claims are keyed off of those or independent on that, or whether those were still in the case.

**MR. NEWTON:**  There's no other.

**MR. SIPIORA:**  No.  I think your rulings effectively deal with the other three patents.  They are effectively eliminated by your ruling, so they're final.  The only thing that -- and the Claim One is final.  So all those are in position and ripe for appeal at this moment once you enter the final judgment.  So procedurally, it shouldn't, I don't think, it's not much of a move at this point just to sever out Claim One of '387, and then the rest of the patent is, when you enter that --

**THE COURT:**  But on the '148 I'm asking.

**MR. SIPIORA:**  Yeah.  There's nothing left.  I mean, you're ruling infringement --

**MR. NEWTON:**  Because everything else left is dependent claims.

**THE COURT:**  All right.  So, I mean, there's several ways, just off the top of my head, I mean, you suggested I could sever and then enter final judgment, because then the only thing that's left is a judgment on the claims that are at issue.  There's no multiple claims left that are mixed.

The other way is to certify under Rule 54(b), and certify is a final judgment, those claims without necessarily having to sever.  I mean, you could do it that way, it seems to me.  And I think if I do a Rule 54(b) certification, is that -- I think any appeal from that is mandatory, not discretionary, isn't it,

as opposed to 1292(b) interlocutory appeal.

**MR. SIPIORA:**  I think it's discretionary.  We have to appeal.  I don't think they have to take it.

**THE COURT:**  You don't think they have to take it under Rule --

**MR. SIPIORA:**  I think we do, but I don't know if the Federal Circuit has to take -- what you would be doing is you'd be saying there's still something left in this case, i.e., the '663 patent and the '387 patent to resolve their claims, so even though this judgment isn't final as to the entire case, I'm going to certify it up.  That's why I think it's just easier, why fool around with it, let's just make it final.

**THE COURT:**  By severing, and make it a stand-alone judgment.

**MR. SIPIORA:**  Yeah, just make it a clean judgment.  And I don't think we're really arguing about that that's not a good way to do it.

**THE COURT:**  All right.  So I could do that, and then with those severed claims I could consolidate -- I have the ability to consolidate under Rule 42, I believe, with the *Avago II* and keep those in play, and then there's a limitations issue, and we would make it *nunc pro tunc*, or relate it back to the original date of the filing.

So, you know, if you can't come to an agreement, I've got to do something, because it doesn't make sense to just -- and I

don't think anybody wants to march down this road and try what's left without getting some guidance from above.  And so I'm hoping you all can make it happen.  If not, I'm going to have to figure out how to make it happen.

MR. NEWTON:  If my client wasn't paying, we'd want to try the case.

THE COURT:  Well, I understand.  I understand.

So do you want to meet and confer and get back to me, I don't know, in a week or something?  Well, it's a short week, end of next week.

MR. NEWTON:  I think that's fair.  I have a client that's out of town, and so I think he gets back the 28th.

MR. SIPIORA:  A week is going to be fine for us.  That makes sense.

THE COURT:  Okay.  Why don't we say a week from Friday, which is --

THE CLERK:  December 2nd.

THE COURT:  December 2nd.  If you could let the Court know by a joint filing, whether it's a letter or a pleading, I don't care -- hopefully, it's some form of stipulation that I can sign and final judgment, and we could just get going and get this process going and see what happens in the Federal Circuit.  Otherwise, if you can't agree, maybe you can at least give me your thoughts on the process that you think I should follow.  I mean, I'll have to figure out exactly what I'm going

to do, but if you want me to do a severance route as opposed to a Rule 54(b) or a 1292 or something, I'd like to hear from you.

MR. SIPIORA: I'll do that.

There's one other loose end I'll just mention, which if we don't agree, or maybe we don't agree on this either, there's the third-party subpoenas. The reason we didn't want to let go of those is because of what you saw the first time around. It took a year to get anyone to agree with it, because I had to move to compel. We would like to just run into the ground on those third parties, so that we can close that out.

THE COURT: Right. I mean, my intent -- my initial reaction would be that once we align everything up right by consolidating and severance, et cetera, et cetera, we would then stay *Avago II*, save and except this narrow area of completing this third-party process, just because we know how long that takes. And unless it's demonstrated that's hugely expensive and a huge burden that might be outdated or something, I'd be inclined to say, well, we'll make one exception to the stay, and that would be the third-party discovery.

MR. SIPIORA: Great. Thank you.

THE COURT: So why don't you see if you can work this out, and then concentrate on the bigger picture, which is getting guidance from the Federal Circuit, and we'll see where we go from there.

**MR. SIPIORA:**  All right.

**THE COURT:**  Sounds like it's unlikely that this case is going to go to trial, then, on the date that we had set.  I won't vacate it yet until I get a stipulation from you all, but it sounds like nobody believes that that makes any sense.

**MR. NEWTON:**  That's correct.

**MR. SIPIORA:**  That's correct.

**THE COURT:**  Okay.  All right.  I don't know if we need to set a further date, because -- what's your forecast as to how long is it taking now once you file a Notice of Appeal to get rulings out of the Federal Circuit?  What's the average time?

**MR. NEWTON:**  A year and two months.

**THE COURT:**  A year and two months.

All right.  We can -- you know what, Betty, let's just set as a control date and status conference, and we could do it by telephone if we need to, just six months out just to make sure we're still onboard.  Obviously, if something happens before then, I'll have you come in and see if we can straighten all this out.  I'm hoping we can get this squared away and then get the appeal started, and we'll just do a phone check-in about six months from now.

**THE CLERK:**  Okay.  June 1st at 11:00 o'clock.

**THE COURT:**  We'll do a telephone status conference.

**THE CLERK:**  Yes.

            **THE COURT:**  Okay.  Great.

            **MR. SIPIORA:**  Than you, Your Honor.

            **THE COURT:**  Thank you.

                  (Proceedings adjourned at 2:30 p.m.)


                           ---oOo---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    Monday, December 19, 2016

_____

Rhonda L. Aquilina, CSR No. 9956, RMR, CRR
Court Reporter